**Joseph B. KAUFFMAN et al.**

**v.**

**The DREYFUS FUND, INC., et al.,**

**Investors Diversified Services, Inc., et al.,**
**Appellants.**

**Nos. 18568–18696.**

United States Court of Appeals, Third Circuit.

Argued June 26, 1970.

Decided Sept. 24, 1970.

Rehearing Denied Oct. 20, 1970.

grams, Inc., Thomas J. Herbert, Dreyfus Corp. and Howard M. Stein.

W. Foster Wollen, James R. Hawkins, II, Shearman & Sterling, New York City, for Tsai Management & Research Corp.

Daniel Mungall, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for Wellington Management Co. and Walter L. Morgan.

Norman A. Hubley, Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., for State Street Research & Management and Paul C. Cabot.

Albert D. Jordan, Valicenti, Leighton, Reid & Pine, New York City, for Waddell & Reed, Inc., Joe Jack Merriman, Arnold Bernhard & Co., Inc. and Arnold Bernhard.

Robert J. Sisk, Hughes, Hubbard & Reed, New York City, for National Securities & Research Corp. and Philip C. Smith.

Philip F. Belleville, Richard Carver, Joseph A. Wheelock, Latham & Watkins, Los Angeles, Cal., for Capital Research & Management and Jonathan B. Lovelace.

Edward H. Hatton, Raymond, Mayer, Jenner & Block, Chicago, Ill., for Securities Supervisors and Edward P. Rubin.

Jerome P. Facher, Hale & Dorr, Boston, Mass., for Pioneer Management Corp. and Philip L. Carret.

James M. Redding, Meyers & Matthias, Chicago, Ill., for Supervised Investors Services and John Hawkinson.

John A. Beck, Frost & Towers, Washington, D. C., for Johnston, Lemon & Co. and James H. Lemon.

Roberts B. Owen, Covington & Burling, Washington, D. C., for Hamilton Management Corp.

Nos. 18596–18607:

Dickinson R. Debevoise, Riker, Danzig, Scherer & Brown, Newark, N. J., for appellants.

Co-Counsel for Appellants:

Philip H. Strubing, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Putnam Management Co., Inc., Charles M. Werly, Massachusetts Co., Inc., Henry R. Guild,

Nos. 18568–18595:

James Hunter, III, John P. Hauch, Jr., Archer, Greiner, Hunter & Read, Camden, N. J., for appellants.

Co-Counsel for Appellants:

Samuel W. Murphy, Jr., Donovan, Leisure, Newton & Irvine, New York City, for Investors Diversified Services and Stuart F. Silloway.

Stuart A. Jackson, Royall, Koegel & Wells, New York City, for Financial Pro-

Colonial Management Ass'n, James H. Orr, Loomis-Sayles & Co., Inc. and Maurice T. Freeman.

Debevoise, Plimpton, Lyons & Gates, New York City, for Scudder, Stevens & Clark, Ronald T. Lyman, Jr., E. W. Axe & Co., Inc. and Louis K. Hyde, Jr.

Nos. 18608–18621:

William P. Verdon, Meyner & Wiley, Newark, N. J., for Fidelity Trend Fund, Inc., Fidelity Fund, Inc., Puritan Fund, Inc., Fidelity Capital Fund, Inc., Dow Theory Investment Fund, Inc., Boston Fund, Inc., Axe-Houghton Fund B, Inc., Eaton & Howard Stock Fund, Eaton & Howard Balanced Fund, One William Street Fund, Inc., Channing Shares, Inc., a corporation, also d/b/a Channing Growth Fund, Channing Balanced Fund, Scudder, Stevens & Clary Common Stock Fund, Scudder, Stevens & Clary Balanced Fund, Inc. and Stein, Roe & Farnham Balanced Fund, Inc.

No. 18622:

Thomas F. Campion, Shanley & Fisher, Newark, N. J., for Manhattan Fund, Inc.

Of Counsel for Appellant:

Whitman, Ransom & Coulson, New York City.

Nos. 18623–18628:

Saverio R. Principato, Camden, N. J., for T. Rowe Price & Associates, Inc., Rowe Price Management Co., Inc., T. Rowe Price, Charles W. Schaeffer, Anchor Corp. and John R. Haire.

Of Counsel for Appellants:

Daniel A. Pollack, Pollack & Singer, New York City.

No. 18629:

Charles J. Milton, Milton, Keane & De Bona, Jersey City, N. J., for Affiliated Fund, Inc.

Nos. 18630–18661:

William G. Bischoff, Burchard V. Martin, Taylor, Bischoff, Williams & Martin, Camden, N. J., for appellants.

Of Counsel for Appellants:

Davis, Polk & Wardwell, New York City, for Dreyfus Fund, Inc., Investors Mutual, Inc., Investors Stock Fund, Inc., Investors Variable Payment Fund, Inc., Wellington Fund, Inc. and Windsor Fund, Inc.

Modesitt & Shaw, Denver, Colo., for Financial Industrial Fund, Inc.

Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for United Funds, Inc., United Accumulative Fund, United Science Fund, United Income Fund, Value Line, Special Situations Fund, Inc., Selected American Shares, Inc., Chemical Fund, Inc., Dividend Shares, Inc. and Bullock Fund, Ltd.

Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for State Street Investment Corp. and Federal Street Fund, Inc.

Berlack, Israels & Liberman, New York City, for T. Rowe Price Growth Stock Fund, Inc. and Rowe Price New Horizons Fund, Inc.

Carl J. Schuck, Overton, Lyman & Prince, Los Angeles, Cal., for Investment Co. of America.

O'Melveny & Myers, Los Angeles, Cal., for American Mutual Fund, Inc.

Frost & Towers, Washington, D. C., for Washington Mutual Investors Fund, Inc., Technology Fund, Inc., Pioneer Fund, Inc., Fundamental Investors, Inc., Anchor Growth Fund, Inc., Anchor Income Fund, Inc., National Securities Series, National Securities Stock Series and National Securities Growth Series.

Winner, Berge, Martin & Clark, Denver, Colo., for Hamilton Funds, Inc.

Nos. 18662–18668:

John C. Howell, Moore & Howell, Newark, N. J., for Colonial Fund, Inc., Commonwealth Investment Co., George Putnam Fund of Boston, Loomis-Sayles Mutual Fund, Inc., Massachusetts Fund, Inc., Putnam Growth Fund and Putnam Investors Fund, Inc.

Nos. 18669–18681:

Donald B. Kipp, James C. Pitney, Pitney, Hardin & Kipp, Newark, N. J., for Fidelity Management & Research Co., Edward C. Johnson, II, Boston Management & Research Co., Vance, Sanders &

Co., Inc., Henry T. Vance, Eaton & Howard, Inc., Charles F. Eaton, Jr., American Express Investment Management Company (Formerly Fund American Investment Co.), Lord, Abbett & Co., Robert S. Driscoll, Lehman Brothers, Allan B. Hunter and Van Strum & Towne, Inc.

Of Counsel for Appellants:

McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for American Express Investment Management Co. (formerly Fund American Investment Co.)

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Lord, Abbett & Co. and Robert S. Driscoll.

Simpson, Thacher & Bartlett, New York City, for Lehman Brothers and Allan B. Hunter.

Milbank, Tweed, Hadley & McCloy, New York City, for Van Strum & Towne, Inc.

Nos. 18682-18690:

William F. Hyland, Hyland, Davis & Reberkenny, Cherry Hill, N. J., for F. Eberstadt & Co., Calvin Bullock, Ltd., Keystone Custodian Funds, Inc., Distributors Group, Inc., Francis S. Williams, Hugh Bullock, Wilfred Godfrey, Herbert R. Anderson and Investment Company Institute.

Of Counsel for Appellants:

Marvin Schwartz, Sullivan & Cromwell, New York City.

No. 18691:

Doane Twombly, Durand, Twombly & Imbriaco, Newark, N. J., for Group Securities, Inc.

Of Counsel for Appellant:

Putney, Twombly, Hall & Hirson, New York City.

Nos. 18692-18696:

Samuel P. Orlando, Orlando & Orlando, Haddonfield, N. J., for Stein, Roe & Farnham, Harry H. Hagey, Jr., Ralph E. Samuel & Co., Donald C. Samuel and Energy Fund.

Of Counsel for Appellants:

Otis H. Halleen, Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., for Stein, Roe & Farnham and Harry H. Hagey, Jr.

Larry M. Lavinsky, Proskauer, Rose, Goetz & Mendelsohn, New York City, for Ralph E. Samuel & Co., Donald C. Samuel and Energy Fund.

Nos. 18568-18696:

Harold E. Kohn, Bruce W. Kauffman, David Pittinsky, Dilworth, Paxson, Kalish, Kohn & Levy, Philadelphia, Pa., for appellees.

Of Counsel for Appellees: .

Joseph B. Kauffman, Atlantic City, N. J.

Before WINTER,* ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Before us for review is an interlocutory order of the district court duly certified for appeal under the provisions of 28 U.S.C. § 1292(b) denying appellants' motions to dismiss the action in its entirety or, alternatively, to dismiss certain individual, representative, and derivative claims.

Plaintiff-appellee, a shareholder of four mutual funds,[1] filed a three-count action against 65 mutual funds, 38 investment advisers, 37 directors alleged to be serving contemporaneously as fund directors or trustees and investment advisers, and the Investment Company Institute, a trade association. Appellee also sued a number of unnamed defendants as part of the three defendant classes: mutual funds, investment advisers, and "self-dealing" directors.

Charging violations of the Sherman Act, 15 U.S.C. §§ 1, 2, and the Clayton Act, 15 U.S.C. §§ 15, 26, Count I alleges that appellants have engaged in a combination and conspiracy "with horizontal

---

* Circuit Judge of the Court of Appeals for the Fourth Circuit, sitting by designation.

1. The Dreyfus Fund, Inc., Fidelity Trend Fund, Inc., Manhattan Fund, Inc., and The Putnam Growth Fund.

and vertical forms and levels of agreement," to adopt and stabilize fees for management services and investment services, to limit competition, to refrain from providing internal fund management, and to otherwise monopolize the management market.

Count II invokes provisions of the Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq. It asserts that the investment advisers indulge in practices known as "give-ups," whereby they direct brokers to execute stock transactions for less than the commission paid to them, giving up the balance to non-executing brokers, and "reciprocals," whereby the advisers, in return for allocating portions of the commissions to non-executing brokers, receive additional compensation in the form of free or discounted investment advice and management services.

Count III, brought under the Securities Exchange Act of 1934, 15 U.S.C. § 78n, .the Investment Advisers Act of 1940, 15 U.S.C. § 80b–6, and the Investment Company Act, *supra*, charges appellants with misrepresentation in the preparation and issuance of proxy and other statements, including the failure to disclose, or the making of false disclosures with respect to, the alleged wrongdoing set forth in Counts I and II.

Appellee sought to maintain this action in several capacities: as a shareholder in his own right against the four funds in which he holds stock; as a class representative under Fed.R.Civ. Pro. 23 of all similarly situated shareholders of 65 mutual funds; by virtue of his class representation of all similarly situated shareholders derivatively on behalf of 65 mutual funds similarly situated; derivatively, under Fed.R.Civ. Pro. 23.1, on behalf of the four funds of which he is a shareholder; and derivatively on behalf of the four mutual funds as a class action on behalf of the 61 other funds similarly situated.

The district court overruled the challenges to appellee's right to bring the action in any or all of the above capaci-

ties. This appeal followed, presenting for our consideration the following issues:

A. Does a shareholder of a mutual fund have a primary or personal cause of action to recover damages allegedly sustained by his corporation by reason of violations of the antitrust and security laws?

   1. If so, may he sue as a class representative under Rule 23 on behalf of all similarly situated shareholders of other mutual funds?

   2. And if he may sue on behalf of these shareholders, may he thereby acquire standing to sue secondarily or derivatively on behalf of the 65 mutual funds?

B. Does a shareholder of mutual funds who sues derivatively on behalf of those funds have standing to bring a class derivative action on behalf of other funds similarly situated?

C. Is a conflict of interest or disabling antagonism presented by appellee's suit on behalf of mutual funds against which he is simultaneously seeking an adjudication of liability?

A

A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue. Ash v. International Business Machines, 353 F.2d 491 (3 Cir. 1965), cert. denied, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966); Loeb v. Eastman Kodak Co., 183 F. 704 (3 Cir. 1910).

Conceding the basic vitality of this rule, appellee contends that the mutual fund is a novel corporate structure and that the unique relationship of the shareholder to the corporation confers upon the shareholder a primary right to redress harm to the fund. Since the redemptive value of a mutual fund share bears a direct relationship to the total net assets owned by the fund, the redemptive value is always directly affected by the net value of the total assets. Therefore, it is argued, when an injury to the fund threatens the value of the assets, the shareholder possesses a primary right to sue.

The difficulty we perceive in this approach is that it fails properly to appreciate, or seeks to ignore, the fundamental tenet of corporation law which treats the corporate body as an entity—indeed, as a person—separate and distinct from those who own shares of its stock. It is this concept of separate identities which is the basis for distinguishing the rights, responsibilities, and immunities of shareholders from the rights and obligations of the corporation. It is this concept that reserves for the corporation the right to vindicate wrongs which harm the corporation, injuring the shareholders only in the sense that stock values are imperiled.

That the worth of a share of appellee's stock is directly proportionate to the value of a mutual fund's net assets is insufficient to destroy these separate identities, to alter the basic shareholder-corporation relationship, and to thereby confer upon appellee legal rights peculiar to the corporation. Nowhere in the cases do we find authority for the proposition that the ease and capacity of evaluating a shareholder's redemptive value of mutual fund shares can vest in him a pro-rata share of the corporation's primary right to sue. To accept this would be to convert an orthodox corporate structure to a general partnership or joint venture with each participant a principal and agent for the others.

Appellee further argues, however, that his right to sue is established by the an-titrust character of this action. He insists that he need not be "directly" injured in order to maintain private treble damage claims, since "the word 'direct' does not appear in Section 4 of the Clayton Act," and because "[a]ll the law requires to state a private treble damage action claim are allegations adequate to show a violation of the antitrust acts and plaintiff has been damaged thereby." Knuth v. Erie-Crawford Dairy Coop. Assn., 395 F.2d 420, 423 (3 Cir. 1968).

We have no quarrel with the view that such allegations are sufficient to state a claim. But we must not confuse requirements necessary to state a cause of action, which is not in issue here, with the prerequisites of standing. Our inquiry here concerns the issue of appellee's standing to sue in his own right when the injury alleged is the reduction in value of corporate shares. This court has considered this precise issue before and has rejected the position pressed by appellee. In *Ash, supra,* 353 F.2d at 493–494, Chief Judge Hastie stated:

> [T]he complaint discloses that the hurtful effect of [the corporation's] conduct upon the value of his stock in competing corporations is the only injury he claims to have suffered.

Such harm is not enough to make the plaintiff a "person * * * injured in his business or property" within the meaning of section 4 of the Clayton Act. The courts have consistently ruled that this language does not include the indirect harm that an individual may suffer as a stockholder through injury inflicted upon a corporation. [Citations omitted].

Indeed, were the rule otherwise the distinction between a stockholder's derivative claim and a claim exercised in his primary right would disappear, and the public policy based strictures on derivative suits could be avoided merely by asserting that economic harm to a corporation in itself constituted justiciable personal injury to each owner of stock in the corporation.

It being established that appellee's alleged injury is by definition "indirect," his attempt to prosecute this action in his own right, as a shareholder, cannot succeed. Efforts to characterize the harm as "direct," or, arguments that "proximate harm" is sufficient or that appellee is "within the sector of the economy in which the violation threatened a breakdown of competitive conditions," South Carolina Council of Milk Products, Inc. v. Newton, 360 F.2d 414, 418 (4 Cir.), cert. denied, 385 U.S. 934, 87 S.Ct. 295, 17 L.Ed.2d 215 (1966), are simply unavailing in light of *Ash.* Indeed, appellee has cited no case in which a shareholder has achieved standing to remedy the type of harm portrayed here.

■ Because appellee, as a shareholder of the four funds, does not have standing to assert a personal action, it is evident that he may not serve as a class representative under Rule 23 on behalf of all similarly situated shareholders of the 65 funds. Before one may successfully institute a class action "[i]t is of course necessary generally that [he] be able to show injury to himself in order to entitle him to seek judicial relief." Kansas City, Mo. v. Williams, 205 F.2d 47, 51 (8 Cir.), cert. denied, 346 U.S. 826, 74 S.Ct. 45, 98 L.Ed. 351 (1953). A plaintiff who is unable to secure standing for himself is certainly not in a position to "fairly insure the adequate representation" of those alleged to be similarly situated. *See* Wright, Law of Federal Courts 307–08. In short, a predicate to appellee's right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class.

■ We must also reject the attempt to convert a shareholder class action, based on the theory of a personal primary right, to a class derivative action—through the shareholders—on behalf of the mutual funds. As noted, appellee is foreclosed from pursuing an action in his own right and, accordingly, may not create a class suit bottomed on such an action. Manifestly, what he may not create, he cannot convert. The attempt, while resourceful, is congenitally incompatible.

**B**

We turn now to an examination of the contention that a shareholder of mutual funds who sues derivatively on behalf of those funds has standing to bring a class derivative action on behalf of other funds similarly situated.

■ Initially, we recognize that a shareholder of a corporation has standing to maintain a derivative action to enforce rights of that corporation. Rule 23.1. To be sure, "the most common example of [a derivative] action is a suit by minority stockholders * * * who claim that the corporation has been wronged." Wright, *supra*, at 317. Accordingly, putting aside the question of a possible conflict of interest, there is no doubt that appellee may litigate derivative actions in behalf of the four funds in which he holds shares. It is, of course, immaterial that these corporations have been named as defendants in the pleadings. Indeed, the shareholder's corporation must be made a separate party defendant, or the suit would be dismissed for failure to include an indispensable party, Sylvia Martin Foundation, Inc. v. Swearingen, 260 F.Supp. 231 (S.D.N.Y.1966); Philipbar v. Derby, 85 F.2d 27 (2 Cir. 1936); and the shareholder's corporation is entitled to answer the shareholder's complaint and defend its refusal to sue. Otis & Co. v. Pennsylvania R. Co., 57 F.Supp. 680 (E. D.Pa.1944). As Mr. Justice Frankfurter observed in his classic dissent in Smith v. Sperling, 354 U.S. 91, 99, 77 S. Ct. 1112, 1119, 1 L.Ed.2d 1205 (1957):

The contrasting difference between a stockholder's suit for his corporation and a suit by him against it, is crucial. In the former, he has no claim of his own; he merely has a personal controversy with his corporation regarding the business wisdom or legal basis for the latter's assertion of a

claim against third parties. Whatever money or property is to be recovered would go to the corporation, not a fraction of it to the stockholder. When such a suit is entertained, the stockholder is in effect allowed to conscript the corporation as a complainant on a claim that the corporation, in the exercise of what it asserts to be its uncoerced discretion, is unwilling to initiate. This is a wholly different situation from that which arises when the corporation is charged with invasion of the stockholder's independent right. Thus, for instance, if a corporation rearranges the relationship of different classes of security holders to the detriment of one class, a stockholder in the disadvantaged class may proceed against the corporation as a defendant to protect his own legal interest.

Appellee would have us further hold, however, that he is also entitled to bring a class derivative action on behalf of the 61 mutual funds in which he owns no shares but which are said to be similarly situated. It is his position that Rule 23.1 (stockholder derivative actions) and Rule 23 (class actions) should be read together to permit such a suit. We are of the opinion that this position is untenable.

■ Rule 23.1 specifically provides:

In a derivative action brought by one or more shareholders * * * to enforce a right of a corporation * * * the complaint * * * shall allege (1) that the plaintiff was a shareholder * * * at the time of the transaction of which he complains or that his share * * * thereafter devolved on him by operation of law. * * *

It is uncontroverted that appellee is not now nor ever was a stockholder of any of the 61 funds he wishes to represent as a class representative in his derivative action. Thus, he has not complied with this provision's unambiguous requirement—amounting to a legal principle—that one who does not own shares in a corporation is not qualified to bring a derivative action in his behalf.[2]

The timber of sound reason forms the conceptual underpinning of the rule requiring stock ownership in a corporation as the prerequisite for bringing a derivative action in its behalf. Only by virtue of the shareholder's interest, which has been described as "a proprietary interest in the corporate enterprise which is subject to injury through breaches of trust or duty on the part of the directors," Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 321, 56 S.Ct. 466, 471, 80 L.Ed. 688 (1936), does equity permit him "to step into the corporation shoes and seek in its right the restitution he could not demand in his own."[3] Standing is justified only by this proprietary interest created by the

2. Lawson v. Baltimore Paint & Chemical Corp., 298 F.Supp. 373 (D.Md.1969). See also Wright, supra, at 318–19.

3. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). Mr. Justice Jackson further observed:

He sues, not for himself alone, but as a representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity. And while the stockholders have chosen the corporate director or manager, they have no such election as to the plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion. The Federal Constitution does not oblige the state to place its litigating and adjudicating processes at the disposal of such a representative, at least without imposing standards of responsibility, liability and accountability which it considers will protect the interest he elects himself to represent. It is not without significance that this court has found it necessary long ago in the equity rules [old Equity Rule 94, 104 U.S. ix; Equity Rule 27, 226 U.S. 649, 656] and now in the Federal Rules of Civil Procedure [former Rule 23(b), now Rule 23.1] to impose procedural regulations of the class action not applicable to any other.

Id. at 549–550, 69 S.Ct. at 1227.

stockholder relationship and the possible indirect benefits the nominal plaintiff may acquire *qua* stockholder of the corporation which is the real party in interest. Without this relationship, there ·can be no standing, "no right in himself to prosecute this suit," Hawes v. Oakland (Hawes v. Contra Costa Water Co.), 104 U.S. 450, 462, 26 L.Ed. 827; Venner v. Great Northern Railway, 209 U.S. 24, 34, 28 S.Ct. 328, 52 L.Ed. 666 (1908).

■ Moreover, because it appears that Rule 23.1 was enacted for the purpose of treating stockholder derivative actions independently of Rule 23, we are particularly unwilling to permit appellee to combine the provisions of these two rules. As Professor Wright has pointed out:

> [I]n almost all derivative actions the stockholder is suing on behalf of a large class of other minority stockholders similarly situated. Because of this in the original rules these actions were treated in Rule 23(b), as a part of class actions generally. *In the 1966 revision it was decided to deal independently with derivative actions by stockholders in a separate Rule 23.- 1. Thus the general class action rule, Rule 23 no longer applies to stockholders' derivative suits.* By the same token, suits by stockholders that are not derivative, * * * are not subject to Rule 23.1.

Wright, *supra*, at 318–19 (emphasis supplied).[4]

Putting aside the enactment of Rule 23.1 as a separate rule, there is a serious question whether, in any case, the explicit limitation provisions have the ca- pacity of expansion by the superimposition of the language of Rule 23 permitting class actions when "there are questions of law or fact common to the class." Such questions cannot be common to the class when one who purports to be the class representative does not, in fact, own shares in a corporation whose interest he seeks to represent. The rights sought to be enforced cannot be considered "common" to those who do and those who do not own shares. "[T]he parties before the court must be members of the class they seek to represent. See e. g. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); 3A Moore, Federal Practice ¶ 23.04 at p. 3419." Dolgow v. Anderson, 43 F.R.D. 472, 491 (D.C.1968).

■ Accordingly, the attempt to bring a class action in behalf of all funds, by virtue of appellee's entitlement to bring derivative suits in behalf of each of the funds in which he holds shares, must fall.[5]

It is also necessary to consider appellee's alternative theory supporting his attempt to "commence a class action on behalf of all corporations." This concept seeks to achieve the same result as the class derivative action we have just discussed, but it is rationalized by a separate argument described in his brief as follows:

> * * * (1) a shareholder suing on behalf of a corporation may bring all suits which a corporation could commence but for the refusal of its officers and directors; (2) a corporation could commence a class action on behalf of all corporations similarly situated; and therefore (3) a sharehold-

---

4. " 'Derivative' actions on behalf of corporations do not fit in the groove of class actions. First, they do not necessarily involve a numerous class of shareholders. *Cf.* Galdi v. Jones, 141 F.2d 984, 992 & n. 3b (2 Cir. 1944). Second, they require special provisions regarding preconditions of suit such as demands on the corporation to bring the action." Kaplan, "Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)," 81 Harv.L.Rev. 356, 387, n. 118.

5. In the questions certified to us for appeal we do not reach the issue whether the individual derivative actions on behalf of the four funds in which appellee owns stock may be prosecuted as a class action or whether they must be pursued separately.

er, standing in the shoes of his corporation, may commence a class action on behalf of all corporations similarly situated.

■ The fatal defect in this "champion of the industry" approach is that it seeks to equate a corporation's primary right of action with a shareholder's secondary right to bring a derivative action. To be sure, if the fund itself sought to bring a class action in behalf of other funds similarly situated, there would be no theoretical barrier prohibiting such a class action. But the fund is not the plaintiff in the case at bar, and the only right the individual derivative plaintiff possesses is a secondary one—a right which not only defines his standing to sue but also limits the extent of the possible recovery, i. e., the damage sustained by the corporation in which he is a shareholder. A secondary right is limited; it is co-extensive with plaintiff's need as a shareholder to protect an interest which allegedly has been impaired. And the very limitation that inheres conceptually in a derivative action is the bar which defeats appellee's attempt to qualify as the class representative for the other funds. A shareholder can only require a corporation to initiate a matter to protect the rights of a shareholder *qua* shareholder; he cannot force a corporation to bring a class action for the fundamental reason that whatever wrongs other corporations similarly situated have sustained are immaterial and irrelevant to a derivative plaintiff's limited and secondary cause of action. There may be injuries to the other corporations, but because appellee does not possess the stockholder relationship to them and the proprietary interest which accompanies this relationship, he may not qualify as their representative in a class action.

## C

■ In view of our holding that appellee may not maintain a primary right of action against any of the mutual funds, Part A, *supra*, we are not convinced that a conflict of interest will be presented when we remand this case to the district court for further proceedings on the derivative claims brought on behalf of the four funds in which appellee holds shares. Derivative claims, if successful, enforce a corporate cause of action, "[a]nd the relief which is granted is a judgment against a third party in favor of the corporation." Price v. Gurney, 324 U.S. 100, 105, 65 S.Ct. 513, 516, 89 L.Ed. 776 (1945). That the corporation is named as a defendant does not, of course, change this result, for it is joined as a necessary party, only as a nominal or technical defendant, and any judgment obtained against the real defendant runs in its favor. Meyer v. Fleming, 327 U.S. 161, 167, 66 S.Ct. 382, 90 L.Ed. 595 (1946); Knapp v. Bankers Securities Corp., 230 F.2d 717, 721 (3 Cir. 1956).

Moreover, we do not believe that appellee's attempt to bring primary suits against the funds is in and of itself sufficient to show interests antagonistic to them. Indeed, in the district court he relinquished any claim for monetary damages against the funds. In any event, we believe that sufficient safeguards exist under Rule 23(d) for the district court to take appropriate action during the course of the proceedings to guard against any conflicts of interests or disabling antagonisms which could possibly appear in the course of these proceedings. In has been said that a "full arsenal of adaptable methods is available to assure the fair and efficient conduct of the action." [6]

6. Rule 23(d), which sets forth various provisions for the making of appropriate orders in the course of a class action, restates the traditional powers of the court under prior law, although they were not spelled out in Rule 23 prior to the 1966 amendments. The catalogue of possible orders contained in Rule 23 (d) is not exhaustive, as Rule 23(d) (5) leaves open the opportunity for orders "dealing with similar procedural matters." Further, the last sentence of Rule 23(d) provides that such orders may be combined with pretrial orders under Rule 16.

The judgment of the district court will be reversed except to the extent it permits appellee to maintain secondary or derivative actions in behalf of the four mutual funds in which he owns shares, *i. e.*, The Dreyfus Fund Inc., Fidelity Trend Fund, Inc., Manhattan Fund, Inc., and The Putnam Growth Fund. The order of the district court which stayed all proceedings in that court will be vacated.

Newberg, "Orders in the Conduct of Class Actions: A Consideration of Subdivision (d)," 10 Boston College, Ind. & Com.L.R. 577 (1969).