Harry **DEAKTOR** and Edith **Deaktor**, his wife, and E. D. Foods, Inc., a Pennsylvania Corporation, Plaintiffs,

v.

**FOX GROCERY COMPANY**, a Pennsylvania Corporation, and John F. Fox, **Defendants.**

**Civ. A. No. 68–542.**

United States District Court, W. D. Pennsylvania.

Oct. 12, 1971.

James H. McConomy, of Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiffs.

Ralph H. German, of Houston, Cooper, Speer & German, Pittsburgh, Pa., for defendants.

## OPINION and ORDER

McCUNE, District Judge.

This action was commenced on May 15, 1968, by Harry and Edith Deaktor as individual plaintiffs and derivatively on behalf of E. D. Foods, Inc., a Pennsylvania corporation in which the individual plaintiffs are minority shareholders within the comprehension of Rule 23.1 of the Federal Rules of Civil Procedure.[1] Defendants are Fox Grocery Company, a Pennsylvania Corporation and its controlling stockholder, John F. Fox. The complaint charges violations of the United States anti-trust and securities laws, common law fraud and breach of fiduciary duty. Jurisdiction is conferred on this court by 15 U.S.C.A. §§ 15 and 78aa and the doctrine of pendent jurisdiction. The parties have completed discovery and filed their pretrial narrative statements. What is presently before us are defendants' motions for summary disposition.

The complaint in this case contains five counts. The individual defendant has moved for judgment on all of them. The corporate defendant has moved for judgment against the individual plaintiffs on Count I, and for judgment against both individual and corporate plaintiffs on Counts III, IV, and V. There is also a motion to dismiss Counts I and II as to both defendants for failure to state a claim.

Count I of the complaint alleges anti-trust violations under sections 1 and 2 of the Sherman Act and section 3 of the Clayton Act. Count II alleges consequential damage to the individual plaintiffs as a result of the alleged anti-trust violations. Count III alleges a purchase of stock in violation of 15 U.S.C.A. § 78j and Rule 10(b)(5). Count IV is a common-law fraud count. Count V alleges a breach of the fiduciary duty owed by a majority shareholder to minority shareholders, and the corporation.

The individual plaintiff Harry Deaktor had for some years prior to 1967 been engaged in the food supermarket business. During the 1950's he had been an executive with Star Markets. He subsequently acted as a supermarket consultant and for several years had an interest in a store known as the Squirrel Hill Food Farm.

The records of this case show that in November of 1966 all plaintiffs entered into an agreement with the corporate defendant (Fox Grocery), the object of which was to bring about the operation of a supermarket to be known as Deaktor's Foodland. "Foodland" is a trademark franchised in this jurisdiction by Fox Grocery.

---

1. Rule 23.1. Derivative Actions by Shareholders

"In a derivative action brought by one or more shareholders * * * to enforce a right of a corporation * * *, the corporation * * * having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder * * * and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not other-

wise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors * * * and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. * * *"

The agreement states that the plaintiffs were unable to obtain proper bank financing without Fox Grocery's guaranty. The parties agreed that the Deaktors would pay into the corporate plaintiff (E. D. Foods), $14,700.00 for 49% of its stock. Additionally, the Deaktors would loan E. D. Foods $10,300.00. Fox Grocery was to pay into E. D. Foods $15,300.-00 for the remaining 51% of its stock. Once this $40,300.00 had been paid into E. D. Foods, Fox Grocery agreed to sublease certain premises to E. D. Foods for use as a supermarket.

In order to finance the operation initially, the Deaktors and Fox Grocery agreed to join in guaranteeing a loan to E. D. Foods by a banking institution for the amount of $314,000.00. The Deaktors agreed to indemnify and hold Fox Grocery harmless from any and all liability incurred by it on account of its guarantee to the aforementioned banking institution.

The Deaktors and E. D. Foods agreed to enter into a Foodland Franchise agreement with Fox and to maintain that agreement until the $314,000.00 loan was paid.

The operation of E. D. Foods was to be carried out by the Deaktors with the supervision and assistance of Fox Grocery. The agreement required Fox Grocery to use its best efforts to aid the operation of E. D. Foods. The agreement also provided that if E. D. Foods on or after one year "from the date hereof, [November 23, 1966] does not have a net profit of 1% on sales before taxes," then Fox Grocery may elect to take over operation of E. D. Foods or in lieu of the said takeover, "purchase from [the Deaktors] their forty-nine percent (49%) of the stock of said corporation at the then book value and thereafter [the Deaktors] shall have no interest in the corporation."

It appears that the agreement was executed in all respects. In March of 1968 Fox purported to assume 100% ownership of E. D. Foods, Inc., asserting that E. D. Foods had failed to earn 1% on gross sales before taxes. Shortly thereafter plaintiffs commenced this action.

The initial motion of defendants asked first for judgment in favor of John F. Fox on all counts, second for judgment against the individual plaintiffs and in favor of Fox Grocery on Count I and finally for judgment against both the individual and corporate plaintiffs and in favor of Fox Grocery on Counts III, IV, and V. Subsequently in their supplemental brief in support of their motion, the defendants argue for dismissal of Counts I and II as against both defendants for failure to state a claim upon which relief may be granted. This appears to be a motion to dismiss under Rule 12(b)(6)[2] and we believe clarity will be served by styling it as such.[3] On oral argument plaintiff objected to the motion to dismiss in that it was not contained in the original motion for summary judgment. While plaintiff's objection to this mixed procedure is understandable, we note that plaintiffs briefed and argued both the motion to dismiss and the motion for summary judgment. We therefore conclude that both motions are in a posture for disposition.

## I. MOTION TO DISMISS COUNTS I AND II FOR FAILURE TO STATE A CLAIM

Defendants' objection to Count I is directed first at its failure to specify any conspirators other than John F. Fox and Fox Grocery Company. Defendants contend that Section 1 of the Sherman Act requires independent business entities as co-conspirators, that is to say that a corporation and its own officers cannot conspire to violate the antitrust laws. But we conclude that this issue does not really confront us. Defend-

---

2. Fed.R. of Civ.P.Rule 12(b) (6).

3. The lack of substantive importance to be attached to the title given such a motion is discussed in 6 Moore, Federal Practice, ¶ 56.02 [3] (2d ed. 1966).

ants' position might have had merit at the time this suit was commenced. However a substantial record has accumulated since commencement. This record cannot be ignored and from an examination of this record it is obvious that plaintiffs contend that a conspiracy existed by and between Fox Grocery Company, John F. Fox, E. D. Foods, Inc., Harry Deaktor, Edith Deaktor and the various other Foodland stores.

Defendants do not seriously otherwise attack the sufficiency of Count I to allege an unlawful tying arrangement. In view of decisions such as Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969) (tying product credit) and Siegel v. Chicken Delight, Inc., 311 F.Supp. 847 (N.D.Cal.1970), aff'd in relevant part, 448 F.2d 43 (9th Cir., 1971) (tying product trademark) (case remanded for redetermination of the amount of damage) we conclude that the complaint is sufficient in this regard.

Defendants do raise a question with regard to the charge in Count I of violations of Section 2 of the Sherman Act. They point to the absence of any averment that the defendants either monopolized or attempted to monopolize. We have examined the record of this case including plaintiffs' briefs and pretrial narrative. From these we must conclude that plaintiffs have not and do not intend to pursue any claim under Section 2 of the Sherman Act. With the exception of the pertinent statutory citation in the original complaint, plaintiffs have not elsewhere even alluded to any monopolization issue. We therefore conclude that these proceedings will be brought into better focus by dismissal of any claim under Section 2 of the Sherman Act as against both defendants. This will be done.

Count II of the complaint alleges that the individual plaintiffs suffered a loss of their income and investment as a consequence of the defendants' antitrust violations committed against the plaintiff corporation. In attacking Count II defendants rely principally on the Fifth Circuit's decision in Martens v. Barrett, 245 F.2d 844 (5th Cir. 1957). In *Martens*, a corporation had been formed by two partners to operate their various businesses including a service station which was leased from Texaco. The two partners were the only stockholders in the corporation. After all their business activities were transferred to the corporation the partners were compensated by salary from the corporation. After two years of operation, Texaco refused to renew the lease of the station. The partners alleged that the refusal came as a result of their refusal to comply with an unlawful tying arrangement, specifically their corporation's refusal to carry certain of Texaco's accessory lines. The partners brought an action in their own right for losses they individually sustained as a consequence of Texaco's antitrust violations. Texaco's motion for summary judgment was granted. On appeal the Fifth Circuit, relying heavily on the decisions of the Third Circuit,[4] held:

"* * * [I]t is universal that where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone, and not its stockholders (few or many), officers, directors, creditors or licensors, who has a right of recovery, even though in an economic sense real harm may well be sustained as the impact of such wrongful acts bring about reduced earnings, lower salaries, bonuses, injury to general business reputation, or diminution in the value of ownership." (footnotes omitted), Martens v. Barrett, 245 F.2d 844 at 846.

That this doctrine that injury to a corporation gives a cause of action only to the corporation, not its stockholders, remains vital is clear from the recent de-

---

4. 245 F.2d 844 at 846 n. 5. See, particularly, Loeb v. Eastman Kodak Co., 183 F. 704 (3d Cir. 1910).

cision in Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 732–733 (3d Cir. 1970) (citing Loeb v. Eastman Kodak Co., 183 F. 704 with approval). In *Kauffman,* the court refused to make an exception to the rule for stockholders in mutual funds.

"Conceding the basic vitality of this rule, appellee contends that the mutual fund is a novel corporate structure and that the unique relationship of the shareholder to the corporation confers upon the shareholder a primary right to redress harm to the fund. Since the redemptive value of a mutual fund share bears a direct relationship to the total net assets owned by the fund, the redemptive value is always directly affected by the net value of the total assets. Therefore, it is argued, when an injury to the fund threatens the value of the assets, the shareholder possesses a primary right to sue.

"The difficulty we perceive in this approach is that it fails properly to appreciate, or seeks to ignore, the fundamental tenet of corporation law which treats the corporate body as an entity—indeed, as a person—separate and distinct from those who own shares of its stock." Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 733.

█ We conclude that these decisions in *Martens* and *Kauffman* clearly establish that the shareholders and employees of a corporation have no claim for relief under the antitrust laws for injuries they suffer as a consequence of the injury done to a corporation by a defendant's conduct in violation of the antitrust laws. The claim of the individual plaintiffs in Count II seeks recovery under the antitrust laws for such consequential damage. We therefore hold that Count II does not state a claim for which relief can be granted. Count II is ordered dismissed as to both defendants.

## II. DISMISSAL OF INDIVIDUAL CLAIMS OF THE DEAKTORS UNDER COUNT I

█ It is not completely clear from the pleading whether Count I was intended as a derivative action by minority shareholders. It is not explicitly called such. We note however the presence of the allegations required by Rule 23.1. We also note that the complaint is not verified as required by Rule 23.1. For the reasons we stated in connection with our disposition of Count II, we conclude that Count I, a claim under the antitrust laws, does not state a claim on behalf of the individual plaintiffs if it was ever intended as such.

We conclude that Count I is a shareholder's derivative suit and that it sufficiently meets all the requirements of Rule 23.1 except that of verification. We believe that the Supreme Court's decision in Surowitz v. Hilton Hotels Corp.[5] sets the tone for construing the requirement for verification of complaints in derivative actions. The trial court in *Surowitz* had dismissed a derivative action when it was shown that the affiant, Mrs. Surowitz, did not even understand the complaint. She had executed the verification after being advised by her son-in-law that the matters in the complaint were probably true. The son-in-law, Irving Brillant, had conducted a thorough investigation which led to the complaint. Mrs. Surowitz merely agreed to having the action brought in her name. The Supreme Court reversed. The Court viewed the ample evidence in the record that a thorough investigation had been conducted before the complaint was drafted as fulfilling the purpose of the requirement for verification.

In the instant case the defendants have deposed the individual plaintiff Harry Deaktor at length about the matters alleged in Count I. We feel this brings this case within the rationale of *Surowitz.* Requiring Mr. Deaktor to verify the complaint at this late date would be mere formalism.

## III. LIABILITY OF JOHN F. FOX

█ Plaintiffs' position as to John F. Fox's liability is that as an officer and director of Fox Grocery, he is individually liable for that corporation's wrongful acts when he was the agency through

5. 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).

which those acts were committed. The defendants take the position that John F. Fox incurs no individual liability for wrongful acts of the corporation. In support of this position the defendant has cited a group of cases which have held that a corporate officer cannot conspire to violate the antitrust laws with his own corporation absent the participation of other independent business entities. Defendants argue that the facts of this case are within the rule of the cited cases. We believe our discussion of co-conspirators set out in connection with the motion to dismiss Count I for failure to state a claim applies here to the position of the individual defendant. The conspiracy asserted by plaintiffs was among Fox Grocery, John Fox, E. D. Foods, the Deaktors and other Foodland stores and their operators.

■ Defendant Fox appears to contend that he is not individually liable for antitrust violations or other tortious conduct when he commits such acts as an officer of the corporation on behalf of the corporation. We are unaware of any authority which would support such a theory. To the contrary, we believe it is well established that an agent is individually liable for torts committed by him pursuant to his agency, see, Restatement of Agency, 2d § 343 (1957).

> "An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal. * * * "

■ Under the antitrust laws the liability of the participating officers of the offending corporation has long been established, Hartford-Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322 (1945).

## IV. MOTIONS OF BOTH DEFENDANTS AS TO COUNTS III, IV, AND V

### A. *Count III.*

Defendants' motion for summary judgment as to the alleged violations of the Securities and Exchange Act asserts that there is no genuine material issue of fact as to the "materiality" of the alleged misrepresentations made by defendants.

As mentioned above the November 1966 Agreement of the parties provided that if E. D. Foods, Inc. on or after one year "from the date hereof does not have a net profit of 1% on sales before taxes," then Fox had the right to either take over operation of E. D. Foods, Inc., or "purchase from [the Deaktors] their forty-nine per cent (49%) of the stock of said Corporation at the then book value. * * * "

As per other provisions of the same agreement defendant Fox Grocery took care of E. D. Foods' bookkeeping. As part of this service, statements were sent to the Deaktors as the officers of E. D. Foods. The individual plaintiffs contend that these statements contained such substantial errors that they were materially misleading as to the amount of before tax profit earned by E. D. Foods. Plaintiffs further allege that defendant misled them by representing that the relevant period for computation of the 1% before taxes figure was the first year of operation. Plaintiffs' contention is that the agreement should be read with an implied proviso that the initial year of operation should not be considered. Plaintiffs urge that it is not "commercially reasonable" to include the first year of operation in the computation of the 1% figure. In sum, the plaintiffs contend that the combination of the erroneous financial statements with the erroneous construction of the agreement constitutes material misrepresentation of fact upon which the plaintiffs relied, which reliance was reasonable in view of the relationship between the parties.

■ We fail to see any merit in plaintiffs' position that the language "on or after one year from the date hereof" is ambiguous. We can find no rational basis for plaintiffs' contention that commercial reasonableness requires the convoluting of this rather simple phrase to read "after one year of operation not including the first year of operation." There are certainly occasions when esoteric trade con-

cepts require proof of meaning, such as in the Hartol Petroleum Corp. v. Cantelou Oil Co.[6] case cited in plaintiffs' brief. But "on or after one year from the date hereof" is not such a phrase. Reasoning men could only read this as meaning one year from the date of the agreement, in this case from November 23rd, 1966.

Plaintiffs' contention that defendants made material misrepresentations therefore depends on whether the alleged bookkeeping errors were of sufficient magnitude that if corrected the accounts of the store would show a profit of 1% before taxes for the period up until, or after, November 23, 1967. The original complaint indicated that this was plaintiffs' theory. However, an examination of the record including the deposition of Mr. Deaktor and the pretrial narrative filed by plaintiffs clearly shows that plaintiffs admit that the store was always operated at a loss. Correction of the accounting errors only reduces the size of the losses. Since the elimination of the accounting errors does not affect defendants' right to exercise its option, these errors are immaterial to the purchase of plaintiffs' interest.

We conclude that there is no genuine issue of fact as to the issue of the materiality of the misrepresentations made to plaintiffs and therefore that the issue of materiality is properly dealt with by summary judgment. We hold the misrepresentations here asserted were not material.

Judgment will accordingly be entered in favor of both defendants as to Count III, the alleged violation of 15 U.S.C.A. § 78j.

B. *Exercise of Pendent Jurisdiction as to Count IV*

In the exercise of pendent jurisdiction we have the guidance of United Mine Workers of America v. Gibbs [7] and Knuth v. Erie-Crawford Dairy Co-op.[8] In *Gibbs* it was stated that:

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged. Yet because the Hurn [v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933)] question involves issues of jurisdiction as well as convenience, there has been some tendency to limit its application to cases in which the state and federal claims are, as in Hurn, 'little more than the equivalent of different epithets to characterize the same group of circumstances' [citation omitted].

"This limited approach is unnecessarily grudging. Pendent jurisdiction in the sense of judicial *power,* exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,' U.S.Const. Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. [citation omitted]. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues there is *power* in federal courts to hear the whole." (footnotes omitted) (emphasis in original), United Mine Workers of America v. Gibbs, 383 U.S. 715, 724–725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218.

The Court went on to describe the discretionary nature of pendent jurisdiction

---

6. 107 F.Supp. 373 (W.D.Pa.1952).

7. 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

8. 395 F.2d 420 (3d Cir. 1968).

justification for which stems from convenience and fairness to the parties. Although not specifically confronted with the question the Court also noted that,

> " * * * if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, at 726, 86 S.Ct. 1130, at 1139, 16 L.Ed.2d 218.

This statement we think is particularly applicable to Count IV in view of our decision with regard to Count III. As previously noted Count IV is merely a statement of the common law claim related to the statutory federal securities law claim. The federal issue having been dismissed before trial we believe it would be inappropriate to retain jurisdiction over the related state claim. Count IV is therefore ordered dismissed as to both defendants.

### C. *Exercise of Pendent Jurisdiction as to Count V*

 Count V is like Count IV attacked only on the theory that this court does not have jurisdiction under the doctrine of pendent jurisdiction. Count V relates to Count I. The theory of Count V would appear to be that the conduct of the defendants, particularly Fox Grocery, which arguably violated the antitrust laws, at a minimum constituted a breach of the fiduciary duty owed a corporation and its minority shareholders by a majority shareholder.[9] We believe that to dismiss Count V would be contrary to the instruction of *Gibbs* and would be an abuse of our discretion. Therefore the motions of both defendants to dismiss Count V are denied.

### V. SUMMARY

In the interest of clarity we will summarize our action and its results. We have left for consideration at trial the following:

a. Count I—a derivative suit by minority shareholders on behalf of their corporation against John F. Fox and Fox Grocery Company for violations of Section 1 of the Sherman Act and Section 3 of the Clayton Act.

b. Count V—an action by Harry and Edith Deaktor in their own right and derivatively on behalf of their corporation against John F. Fox and Fox Grocery Company for breach of fiduciary duties owed by a majority stockholder to a corporation and its minority stockholders.

c. Count II—is ordered dismissed as to both defendants for failure to state a claim upon which relief may be granted.

d. Count IV—is ordered dismissed as a discretionary matter.

e. The motions of both defendants for summary judgment are granted as to Count III.

This opinion will constitute our Order.

---

9. See, Speed v. Transamerica, 99 F.Supp. 808 at 849 (D.Del.1951).