**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3872
_____

SAMUEL YAROSH, Jr.,
both individually and derivatively on
behalf of Fox Development, Inc.,

Appellant

v.

CAROLE SALKIND; STEVEN SALKIND; MORTON SALKIND; PETER ROSEN;
ROSEN & AVIGLIANO; BARBARA COHEN; JOHN HARRIS; MALLER, EDIDIN
COMPANY, P.C.; ANSEL EDIDIN; INFRAME, INC.; DAN BATES; ULYSSES
CORPORATION; LIBERTY SPEEDWAY; MAPLE INDUSTRIES; GIANT
ASSOCIATES; ACME ASSOCIATES, INC.; LEISURE HEIGHTS, INC.; SABAL
INDUSTRIES
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 2-04-cv-01816)
District Judge:  Honorable Dennis M. Cavanaugh
_____

Submitted Under Third Circuit LAR 34.1(a)
January 17, 2013
_____

Before: SMITH, CHAGARES and BARRY, <u>Circuit Judges</u>

(Opinion Filed: February 6, 2013)
_____

OPINION
_____

BARRY, <u>Circuit Judge</u>

Samuel Yarosh, Jr., appeals the District Court's grant of defendants' motions for summary judgment as to his individual claims and his derivative claims on behalf of Fox Development, Inc. ("Fox") against Carole Salkind ("C. Salkind"), Morton Salkind ("M. Salkind"), Steven Salkind ("S. Salkind"), Barbara Cohen, John Harris, John Quinn, InFrame, Inc., Dan Bates, Ulysses Corporation, Sabal Industries, Liberty Speedway, Maple Industries, Giant Associates, Acme Associates, Inc., and Leisure Heights, Inc. We will affirm.

## I. Factual Background

On or about May 1, 1995, Yarosh met M. Salkind, an introduction arranged by Peter Rosen, Yarosh's attorney. At this meeting, or shortly thereafter, Yarosh and M. Salkind allegedly entered into an oral agreement to be equal partners in the development of a property in Rockaway Township known as "Lot 48." The development was to be run out of Fox, one of M. Salkind's existing companies. M. Salkind's wife, C. Salkind, was, at all relevant times, the sole shareholder of Fox; M. Salkind, the sole Director; and C. Salkind and the Salkinds' son, S. Salkind, Officers. The claims in this case stem from the more than fifteen-year-old alleged oral agreement.

Yarosh originally planned to develop Lot 48 as a retail mall. When Yarosh and M. Salkind were unable to secure the required zoning change for a mall, the two decided to develop Lot 48 as a senior housing development called "Fox Hills." From 1995

through 1997, Yarosh and M. Salkind worked on developing Fox Hills. In 1997, Rockaway Township approved the construction of Fox Hills on Lot 48, and Yarosh and M. Salkind began selling units. Construction on Fox Hills began on September 7, 1997.

Yarosh alleges that throughout the period of their relationship, M. Salkind, at times with the assistance of other defendants, engaged in a scheme to defraud Yarosh of millions of dollars in profits from Fox Hills, loot Fox of its assets, unlawfully divert Fox funds to other persons and entities, alter Fox's books, and invest the money diverted from Fox into purchases of real estate to the detriment of Yarosh and Fox.[1]

## II. Procedural Background

Yarosh's 33-count Second Amended Complaint asserted derivatively on behalf of Fox, and individually on his own behalf, federal claims under the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), state RICO claims, and additional state tort and statutory claims. On March 25, 2006, the District Court bifurcated the case and ordered that the first phase of discovery proceed only on "the question of whether [Yarosh] either owned an equity interest in [Fox] as a shareholder, partner or otherwise, or was somehow cheated out of such an interest." At the conclusion of phase one discovery, the parties moved for summary judgment. Yarosh moved for partial summary judgment on the issue of shareholder status. Defendants moved for summary judgment on all claims. On August 19, 2008, the Court granted defendants' motions for summary

---

[1] On May 28, 2008, M. Salkind pled guilty to tax evasion in connection with Fox's tax filings.

judgment.

Yarosh timely appealed. We stayed the appeal pending resolution of M. Salkind and C. Salkind's bankruptcy proceedings. On January 10, 2012, we lifted the stay after the Bankruptcy Court granted Yarosh's motion for relief from the automatic stay in both bankruptcy proceedings so that this appeal could go forward, and because resolution of the bankruptcy proceedings is years away and, in any event, would likely have no impact on our decision.

### III. Standard of Review

The District Court had subject matter jurisdiction under 18 U.S.C. § 1965 and 28 U.S.C. § 1331, and supplemental jurisdiction over Yarosh's state claims. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the Court's grant of summary judgment. *In re Sunrise Sec. Litig.*, 916 F.2d 874, 878 (3d Cir. 1990). Applying the same standard as applied by the District Court, we will affirm a grant of summary judgment only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, viewed with all inferences in favor of the non-moving party, show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ .P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Azur v. Chase Bank, USA, Nat'l Ass'n,* 601 F.3d 212, 216 (3d Cir. 2010) .

## IV. Analysis

### A. Derivative Claims

A plaintiff bringing a derivative action on behalf of a corporation must allege that he or she was "a shareholder or member at the time of the transaction complained of, or that [his] share or membership later devolved on [him] by operation of law." Fed. R. Civ. P. 23.1(b)(1); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 735 (3d Cir. 1970) ("[S]tock ownership in a corporation [is a] prerequisite for bringing a derivative action in its behalf.").

Yarosh was never a shareholder of Fox and, therefore, lacks standing to bring derivative claims on its behalf. Fox only ever had one shareholder—C. Salkind. Yarosh admits he has no proof of stock ownership or a proprietary interest in Fox. There is no stock certificate. There is no written shareholder agreement. There is no written agreement between Yarosh and M. Salkind defining Yarosh's connection to Fox. There is no Fox document listing Yarosh as an owner or possessing an ownership interest. Yarosh never spoke to C. Sikland about ownership and there is no documented request for a stock certificate or other written document evidencing an ownership interest. There is no evidence Yarosh was ever represented to others as a shareholder or possessing an ownership interest, and in no personal document (e.g., tax return, financial statement,

5

personal loan) does Yarosh declare an ownership interest in Fox.[2]

Yarosh has, therefore, failed to set forth any facts supporting even an inference that he was a shareholder. He argues, however, that he was to be "equal partners"[3] with M. Salkind under the terms of their oral agreement, which, in his view, meant a 50% ownership interest in Fox. Yarosh's purported understanding of "equal partners" as involving an ownership interest, however, is belied by his own testimony distinguishing "partner" from "shareholder." Yarosh testified that when he discovered evidence of tax fraud and knew an IRS investigation was imminent, he "[did] not want to be a shareholder. [He] want[ed] to be a partner. If [he] was a shareholder [he] would be involved with the IRS and the U.S. Attorney's office, because [he] found . . . massive Internal Revenue fraud." (J.A. 778). He testified that before he discovered the fraud, he was asking for stock certificates, but stopped after becoming aware of the potential investigation because he feared liability and, thus, wanted no ownership interest in the company.

Yarosh also contends that a $250,000 loan he made to Fox—and which was repaid with interest—was a shareholder loan and supports his purported ownership interest. There is no evidence that this was a shareholder loan. The corporate tax forms Yarosh

_____

[2] Furthermore, in unrelated collection proceedings, Yarosh claimed under oath that his relationship with Fox was that of an employer/employee and that his assets in Fox did not include an ownership interest. (J.A. 1314–1318, 1320).

[3] The original complaint only spoke of a "partner" relationship between M. Salkind and Yarosh. The Second Amended Complaint redefined their relationship as one of "equal shareholders."

6

points to list one lump sum for shareholder loans; the constituent loans are not delineated. To conclude that this shareholder loan line item includes Yarosh's loan would be pure speculation.

Finally, Yarosh states he was listed as a joint client with M. Salkind on Fox's legal bills and was listed as a 10% owner of Fox on a Fox-drafted loan application. Rosen, Fox's attorney, testified that a client name is used only as a filing and reference aid and is of no consequence. Rosen said he simply included Yarosh's name because he often worked directly with Yarosh on Fox-related matters. In terms of the document to which Yarosh refers, it was not a loan application at all but a proposal, and it was prepared by Summit Bank, not Fox. Finally, and most importantly, it proposed that Yarosh guarantee 10% of the loan; there is no mention of ownership.

## B. Individual Claims

Yarosh also asserts that the District Court erroneously dismissed his individual claims and criticizes the Court for not providing separate analyses of his derivative claims and individual claims. However, Yarosh himself failed to clearly separate his individual claims from his derivative claims in his 140-page Second Amended Complaint. Likewise, on appeal, he fails to even identify his individual claims, much less explain why their dismissal was erroneous. Indeed, we are unclear what the individual claims are, much less if any of them remain following the dismissal of the derivative claims based on a finding of no ownership interest. Given this lack of clarity, we can no more perform a

7

separate analysis of the purported individual claims than could the District Court.

## VI. Conclusion

The Order of the District Court will be affirmed.