**Harry DEAKTOR et al., Plaintiffs-Appellants,**

v.

**FOX GROCERY COMPANY, a Pennsylvania corporation and John F. Fox, Defendants-Appellees.**

**No. 72–1327.**

United States Court of Appeals, Third Circuit.

Argued Feb. 13, 1973.

Decided March 27, 1973.

James H. McConomy, John McN. Cramer, John C. Unkovic, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellants.

Ralph H. German, John D. Houston, II, Thomas E. Lippard, Houston, Cooper, Speer & German, Pittsburgh, Pa., for appellees.

Before VAN DUSEN and ADAMS, Circuit Judges, and BRODERICK, District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The basic issue on this appeal is whether plaintiffs' evidence regarding damages was adequate to support a claim for alleged antitrust violations.

Fox Grocery Company (Fox), franchisor of retail supermarkets doing business under the "Foodland" name in

Western Pennsylvania, discussed with Harry Deaktor, an experienced supermarket operator, the possibility of opening a Foodland franchise store, in the Squirrel Hill section of Pittsburgh, under the management of Mr. Deaktor. E. D. Foods, Inc. was formed to operate the proposed supermarket, and in November, 1966, Harry Deaktor and his wife Edith signed an agreement prepared by Fox dealing with the ownership of E. D. Foods, Inc. and the operation of the store.

Under the agreement, the supermarket was financed by an investment by the Deaktors of $14,700. for 49% of the issued stock, and an investment of $15,300. provided by Fox for 51% of the issued stock. The Deaktors also lent E. D. Foods, Inc. $6,300. in cash and approximately $6,000. worth of equipment. Substantial corporate borrowings were secured by the guaranty of Fox and the Deaktors and by a pledge of the Deaktors' assets. The agreement provided in part that if after one year E. D. Foods, Inc. did not show a net profit of 1% on sales before taxes, Fox had the right, among other alternatives, to purchase the Deaktors' stock in the corporation at its then book value.

The supermarket was opened on November 30, 1966. On March 17, 1968, Fox advised the Deaktors that because the store had failed to produce a 1% net profit, as provided by the agreement, it was exercising the option to purchase the Deaktors' stock.

Suit was brought in the district court by the Deaktors individually and derivatively on behalf of E. D. Foods, Inc. against Fox and its president, John Fox. The complaint contained five counts:

I. Derivative action on behalf of E. D. Foods, Inc. for alleged violations of the antitrust laws, including price-fixing and tie-in sales.

II. Action on behalf of Harry and Edith Deaktor for damages allegedly caused to them by the same alleged antitrust law violations.

III. Action on behalf of Harry and Edith Deaktor for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission by the alleged publication of false and misleading information in connection with the acquisition of the Deaktors' stock in E. D. Foods, Inc. by Fox.

IV. Action on behalf of Harry and Edith Deaktor for alleged common law fraud on the same facts as Count III.

V. Action on behalf of Harry and Edith Deaktor for alleged breach of the fiduciary duty owed a minority shareholder by a majority shareholder based upon the alleged antitrust violations in Counts I and II.

After extensive discovery, both defendants moved for summary judgment or dismissal of the complaint. By opinion and order dated October 12, 1971, the district court, 332 F.Supp. 536, dismissed Count II of the complaint for failure to state a claim upon which relief can be granted, granted summary judgment for the defendants on Count III, and dismissed Count IV, which was grounded upon pendent jurisdiction, as a discretionary matter.

The case came on for jury trial in February, 1972 on Counts I and V of the complaint. At the conclusion of the plaintiffs' evidence, the court granted the defendants' motion for a directed verdict as to Count I on the alternative grounds that "the evidence as to causal connection between the alleged antitrust violations and the damages which it is alleged that E. D. Foods suffered is too speculative to submit to the jury, and that the evidence as to the alleged damages suffered by E. D. Foods is too speculative to submit to the jury."[1]

Having carefully examined the record below and considered the conten-

---

1. The district court denied defendants' motion for a directed verdict as to Count V.

On joint motion of both parties, the court continued the hearing of Count V until

tions presented in briefs and at oral argument, we affirm the judgment of the district court.

■ There was clearly no error committed by the district court's actions concerning Counts II, III, and IV of the complaint. Count II sought relief on behalf of the Deaktors individually for damages allegedly caused to them (loss of income and loss of equity investment) by Fox's alleged antitrust violations. This Court's decision in Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3d Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971), established that shareholders of a corporation, *qua* shareholders, have no antitrust claim for harm suffered as a consequence of injury to the corporation allegedly caused by a defendant's conduct in violation of the antitrust laws. The Deaktors argue that the *Kauffman* principle is inapplicable to the present case because they are seeking relief for injury caused directly to them, not for injury caused to E. D. Foods, Inc. It is unnecessary, however, for this Court to examine the implications of this proffered distinction, for the district court's disposition of Count II must be affirmed in any event.

■ The basis for the Deaktors' claim that they were personally and directly injured by Fox's alleged antitrust violations is the contention that Fox's conduct *caused* the failure of the supermarket to produce a 1% net profit, thus triggering Fox's right to purchase the Deaktors' stock and thereby depriving them of their income and equity investment. As the district court concluded, and as this Court holds today, *infra,* the Deaktors were unable to demonstrate satisfactorily in support of Count I,

which rests upon the same contention as that urged to uphold Count II, that Fox's activity caused the financial losses of Deaktor's Foodland. Under these circumstances, it would serve no purpose, even assuming a distinction between this case and *Kauffman,* to remand this case to the district court to enable plaintiffs to endeavor to prove that which they have already failed to establish.

■ With respect to Count III of the complaint, the district court held that even assuming misrepresentations (accounting errors) regarding Fox's purchase of the Deaktors' stock, such were not material and, thus, not actionable under Rule 10b-5 of the Securities and Exchange Commission. 17 C.F.R. § 240.-10-5. The parties disagreed as to the relevant date from which the agreement's one-year period commenced in determining whether the store was operating at a 1% net profit. The district court committed no error in concluding that the provision, "on or after one year from the date hereof," meant on or after one year from the date of the agreement. Because, as the Deaktors conceded, the store always operated at a loss, any alleged accounting errors could at most have varied the amount of the store's loss and, if corrected, would not have placed the supermarket above the 1% net profit figure. Therefore, such errors, even if they existed, were not material.

■ The district court's ruling as to Count IV must also be affirmed. Pendent jurisdiction for this common law fraud claim depends upon the relationship between the facts alleged in support of Count III and those alleged in Count IV.[2] To the extent that Count IV is based upon the same facts as those

decision by this Court of the present appeal. Under these circumstances, we intimate no view concerning the issues raised by Count V, except to note that the potential liability of the individual plaintiffs on their guarantees made to secure the borrowings of E. D. Foods, Inc. may be covered by this Count.

2. Under the doctrine of pendent jurisdiction, federal courts have *power* to adjudicate claims based upon state law whenever there is a substantial federal claim "and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case'."

alleged in support of Count III, the district court's conclusion as to the immateriality of any alleged accounting errors, which we affirm, *supra*, serves as an adequate foundation for the rejection of both claims, since materiality is an essential element of common law fraud. To the degree that Count IV is based on facts *different* from those alleged in support of Count III, (1) if those facts are still sufficiently similar to conclude that only one constitutional "case," under the United Mine Workers v. Gibbs principle, fn. 2, *supra*, is presented,[3] we hold that the district court did not abuse its discretion in dismissing Count IV, and (2) if the facts are sufficiently different so as not to present one constitutional "case," we conclude that the district court lacked *power* to adjudicate the Count IV claim. Upon these alternative bases, therefore, we affirm the district court's disposition of Count IV.

■ ■ The primary thrust of the Deaktors' argument on appeal has been directed toward the issues underlying Count I of the complaint. Mr. Deaktor testified that Fox required Deaktor's Foodland to sell at suggested retail prices. He also testified that the store was required, as a condition of obtaining a Foodland franchise and of not having to pay higher rent, to purchase products exclusively from Fox Grocery Company. Price-fixing and tie-ins, if proved, are illegal under the antitrust laws. *See, e. g.,* Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969) (tie-in); Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968) (maximum price-fixing); Siegal v. Chicken Delight, Inc., 311 F.Supp. 847 (N.D.Cal.1970), aff'd, 448 F.2d 43 (9th Cir. 1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972) (tie-in). In order to recover under the antitrust laws, however, a plaintiff must, in addition to demonstrating an antitrust violation, prove: (1) a causal relationship between the antitrust violation and the alleged injury, and (2) measurable damage to his business or property.

■ Even assuming that the Deaktors have satisfied their burden of proving that Fox was engaged in price-fixing and tie-in sales, after our own independent examination of the record we cannot say that the district court erred in concluding that the plaintiffs' evidence on damages was too speculative to send to the jury.

The Deaktors' theory of recovery is that the prices fixed by Fox for the Foodland stores were too low and the cost of merchandise tied to the Foodland franchise and the low rent too high to realize a net profit. Plaintiffs' sole witness on the amount of damages was Harry Deaktor, who testified that if he had been permitted to buy meat from a relative and produce directly from the produce yards, and to raise the store's selling prices by 2 or 3%, in his opinion, Deaktor's Foodland would have realized a *gross* profit of 21%. Other than the unsupported statement that *net* profit would have increased in the same amount as gross profit, the record was barren of evidence concerning net profit. Furthermore, the 21% gross profit figure itself was characterized by Mr. Deaktor as an "objective" and a "goal." Mr. Deaktor's testimony was ambiguous concerning the supermarket's competitors, the extent to which he would have been able to raise prices absent Fox's alleged price-fixing, and the relevant cost figures necessary to determine net profit. Plaintiffs' failure to produce evidence concerning the factors essential to establish net profit as opposed to gross profit, in effect, meant that the jury would have had to speculate as to the amount of damages. The district court committed no error in concluding that

---

United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed. 2d 218 (1966). *Exercise* of the power is discretionary and depends upon such considerations as judicial economy, convenience, and fairness to the litigants. *Id.* at 726, 86 S.Ct. 1130.

3. *See id.* at 725, 86 S.Ct. 1130.

plaintiffs did not meet their burden of establishing the quantum of damages.[4]

In addition, the plaintiffs' causation theory was conjectural. Their own expert witness, Professor Applebaum, testified regarding the various reasons that might cause a retail supermarket to be unprofitable, but assigned no specific cause for the financial losses of Deaktor's Foodland. The district court did not err in concluding that, based upon Professor Applebaum's and Mr. Deaktor's testimony, the evidence concerning causation was speculative.

An order will be entered affirming the judgment of the district court. Costs taxed against appellants.

4. In this regard, it is appropriate to note that plaintiffs' failure to satisfy their burden of proving the amount of damages "was so only because [they] chose to rely almost entirely on one expert witness and one lay witness for [their] proof of damages. Any inadequacy which may have resulted should be attributed to [plaintiffs'] own presentation of [their] case rather than to the law or the court's application of it here." Farmington Dowel Products Co. v. Forster Mfg. Co., 421 F.2d 61, 83–84 (1st Cir. 1969).