Ronald W. WOBB, Individually and in his own behalf and on behalf of all other shareholders of Holiday Ford Sales, Inc., Plaintiff,

v.

FORD MOTOR COMPANY, a Delaware Corporation, Ford Marketing Corporation, a Delaware Corporation, and Holiday Ford Sales, Inc., a Delaware Corporation, Defendants.

No. 73–492 CA.

United States District Court, W. D. Pennsylvania.

Oct. 2, 1977.

Alan Bruce Bowden, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for plaintiff.

John H. Morgan, David E. Tungate, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendants.

## OPINION AND ORDER

JOHN L. MILLER, District Judge.

Plaintiff, individually and as a shareholder of defendant Holiday Ford Sales, Inc., brings this action against the several defendants on seven (7) counts for alleged violations of the Dealers' Day In Court Act (15 U.S.C. § 1221), various antitrust laws, breach of certain agreements and breach of fiduciary obligations attendant to those agreements. Pursuant to F.R.C.P. 13 defendants asserted a counterclaim in three (3) counts likewise charging defalcations and breach of contract. All parties have—and still are—actively engaged in lengthy and comprehensive discovery. Presently before the Court are three separate motions. To better understand our disposition of same we initially state most favorably for plaintiff the factual circumstances which surround the legal relationships established between the various parties to this litigation.

Ronald W. Wobb, aspiring to become a wholly independent Ford Dealer, entered into three written contracts with various of the defendants. These contracts are attached to a stipulation of authenticity filed in this action in November 1973. Taken together these agreements can be said to comprise the legal ingredients for what is called Ford's Dealer Development Program.

The *Dealer Development Contract* (Stipulation, Attachment B) between Ford Motor Company and Ronald W. Wobb, Operator, is dated December 10, 1965, and provides for the formation of a corporation, Holiday Ford Sales, Inc. (Holiday), to engage in the automobile dealership business. Ford is to start with 80% equity, Wobb with 20%. Ford's shares are preferred and voting; Wobb's are common and non-voting. Profits of the dealership retire preferred shares (section IV. E.) and go to Mr. Wobb as bonus (IV. C.), at least half of which he must then apply to the purchase of additional common shares, converted from preferred shares (section VI.). Eventually, if the dealership prospers, all preferred shares are retired or converted, Mr. Wobb's common shares become voting shares, and Mr.

Wobb becomes, in effect, sole owner and an independent dealer (section V. D.). Also under this Contract the Dealership (Holiday) and the Operator (Wobb) agree to enter into a Management Contract (section VIII.) and contemplate that Ford Motor Company and the Dealership will enter into a Sales Agreement.

The *Ford Sales Agreement* (Stipulation, Attachment A) is dated December 8, 1965, and the parties to it are Ford Motor Company and Holiday, both Delaware corporations. The Agreement contains a lengthy Preamble, praising the method of distributing Ford automobiles to customers through authorized retail dealers and further states, in section F, that the agreement was executed in reliance upon the representation that Wobb would be part owner (20%) of the Dealer and that he would have full managerial authority in the operation of the Dealer. Standard Provisions attached to the Sales Agreement require "the Dealer [to] establish, maintain and equip" an adequate facility (paragraph 2.(b)) and to "maintain and employ . . . net working capital and net worth as may be required. . . ." (paragraph 2.(c)).

The *Management Contract* (Stipulation, Attachment C) between Holiday and Wobb is dated December 14, 1965 and merely hires Mr. Wobb "to conduct the business of Dealership under the supervision of its Board of Directors and in accordance with the By-laws of Dealership . . ." (section 1.).[1]

Eventually, for reasons yet to be decided, animosity surfaced between Wobb and Ford with the resultant deterioration of the business relationships established by the agreements outlined above. It is because of Ford's subsequent conduct, in essence refusing to help the dealership prosper, that this suit was brought.

## DISCUSSION

The defendants have moved for partial summary judgment on four (4) of plaintiff's seven (7) counts. Plaintiff responded by moving to strike the motion for partial summary judgment (Rule 12(f)) and requesting that sanctions be imposed on defendants for use of oppressive discovery tactics. More recently plaintiff has moved to amend the complaint to add four (4) more counts of liability.

We thus have before us three separate motions ripe for disposition. Because of the greater importance we attach to defendants' motion for partial summary judgment it will be discussed last.

## PLAINTIFF'S MOTION TO STRIKE AND FOR SANCTIONS

In opposition to defendants' motion plaintiff lists the extent of discovery by both parties up to the present and avers additional and substantial discovery for the future. Plaintiff therefore contends discovery is far from complete and of necessity defendants' motion for partial summary judgment is premature at this point.

■ Plaintiff further contends such a motion would significantly delay the trial of this action by pre-empting a substantial portion of the period which would otherwise be crowded by extensive discovery. Therefore plaintiff requests the Court to strike the defendants' motion. Because it is our belief that no further discovery can alter the facts with respect to the manner in which Counts II and III are addressed this motion is denied.

■ Regarding his motion for sanctions plaintiff contends that defendants' *second* set of interrogatories (292 pages) asks if he remembers what he could not recall during fourteen (14) days of deposition. Plaintiff contends that defendants' *third* set of interrogatories request supplementation of his answers to the *first* set of interrogatories. Thus plaintiff contends such interrogatories (2nd and 3rd set) were served at a time when plaintiff was taking his first set of

---

1. Defendant Ford Marketing Corporation is alleged to have become a party to one or more of these contracts (Complaint ¶.9). Whether it

has is not crucial to our disposition of these motions.

depositions and therefore believes that these interrogatories amount to harassment and are superfluous. Plaintiff therefore requests certain sanctions. This motion is also denied by reason of mootness because plaintiff answered the interrogatories instead of moving for a protective order pursuant to F.R.C.P. 26(c).

### PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff seeks to amend his complaint to add four (4) counts arising under § 4 of the Clayton Act, *viz.,* §§ 2(e) and 2(a) of the Robinson-Patman Act, 15 U.S.C. §§ 13(e) and 13(a), and § 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiff contends the additional counts reflect additional information uncovered by discovery.

Knowing full well that leave to amend complaints is to be freely given under the language of F.R.C.P. 15(a) and the cases construing it, *see Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), we would ordinarily grant plaintiff's motion in summary fashion. However because the four proposed counts are grounded on antitrust violations and stem from § 4 of the Clayton Act, we cannot permit their joinder under our disposition of the standing issue discussed below. This motion will be denied.

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants contend that the indisputable facts of record entitle them to judgment as a matter of law with respect to four (4) of plaintiff's seven (7) theories of liability. In this regard they argue respectively:

### COUNTS II, III, VI AND VII

### COUNT II

The acts alleged by the plaintiff do *not* constitute a *refusal to deal* under § 1 of the Sherman Act, 15 U.S.C. § 1, and plaintiff as a shareholder or individual was not injured within the meaning of § 4 of the Clayton Act, 15 U.S.C. § 15, therefore he has no standing to sue.

### COUNT III

The acts alleged by the plaintiff as constituting an *attempt to monopolize* under § 2 of the Sherman Act, 15 U.S.C. § 2, cannot be established by proof needed under *Rea v. Ford Motor Company,* 497 F.2d 577 (3 Cir. 1974), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 106 (1974). This too being an antitrust claim it is also asserted that plaintiff lacks standing.

### COUNT VI

In alleging that the dealer development arrangement is unconscionable and unenforceable, plaintiff is precluded from recovery because of waiver, estoppel and ratification. Furthermore plaintiff cannot seek money damages predicated on a contract which he contends is unconscionable and unenforceable.

### COUNT VII

This count involves plaintiff's termination of employment under the Management Contract by Holiday's Board of Directors at the parent corporation's suggestion. Defendants believe this was a privileged inducement because it was done in the best interests of the corporation.

At the outset we should note our awareness of judicial unwillingness to summarily dispose of antitrust litigation. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). This is due, for the most part, to the complex factual questions often spawned by such litigation, especially where motive and intent play an important role. *See Norfolk Monument Co., Inc. v. Woodlawn Memorial Gardens, Inc.,* 394 U.S. 700, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969); *Booth Bottling Co., Inc. v. Beverages International, Inc.,* 361 F.Supp. 340 (E.D.Pa.1973). However Rule 56(c) provides that judgment can be entered as a *matter of law* where there is no genuine issue as to any material fact. Thus while summary judgment is uncommon in antitrust suits it certainly is not extinct. *See First National Bank of Arizona v.*

*Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Tripoli Company v. Wella Corporation,* 425 F.2d 932 (3 Cir. 1970); *Gasperi v. Cinemette Corporation of America,* 391 F.Supp. 826 (W.D.Pa. 1975).

Defendants attack Counts II and III of the complaint on two separate theories. Because we deem the issue of standing to be the threshold question, defendants' argument that the alleged acts in those two counts cannot be violations of §§ 1 and 2 of the Sherman Act need not be addressed.

### STANDING—COUNTS II AND III [2]

The issue of whether plaintiff possesses standing to assert violations of the antitrust laws which if proven would entitle him to treble damages under § 4 of the Clayton Act is, we think, well settled in this jurisdiction. Plaintiff brings this suit as a shareholder of Holiday and as an individual for the harm allegedly caused by violations of the antitrust laws. The Third Circuit has taken the position that shareholders of a corporate entity lack standing under § 4 unless they are *directly* harmed. *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727 (3 Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971). Since the primary wrong was to the corporate entity the Court reasoned that the shareholder was only indirectly harmed and thus possessed no primary right to sue, citing *Ash v. International Business Machines, Inc.,* 353 F.2d 491 (3 Cir. 1965), *cert. denied,* 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966) and *Loeb v. Eastman Kodak Co.,* 183 F. 704 (3 Cir. 1910). Doubtless no better explanation of this approach to standing under § 4 Clayton Act is offered than the following observations by Judge Ely in *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31,* 481 F.2d 122, 127 (9th Cir. 1973):

> Courts adhering to the "direct injury" test focus principally on the relationship between the alleged antitrust violator and the claimant. Generally, if the claimant is separated from the violator by an intermediate antitrust victim, standing is denied by attaching conclusory labels such as "remote," "indirect," and "consequential".

Admittedly Judge Ely goes on to criticize this approach to standing as too restrictive and label-oriented however, until the Supreme Court speaks or the circuit reconsiders and overrules its position, it remains the law by which this Court is guided.

■ In reviewing the allegations of Counts II and III we come to the inescapable conclusion that the primary wrongs gravitate to the dealership (Holiday), the "intermediate antitrust victim" that lies between Wobb and Ford. Plaintiff, not here seeking redress via a stockholder's derivative action, cannot sue under Counts II and III in the capacity of shareholder as a matter of law.

Nor do we believe standing is afforded to him as an individual. *Deaktor v. Fox Grocery Company,* 332 F.Supp. 536 (W.D.Pa. 1971), *aff'd* 475 F.2d 1112 (3 Cir. 1973). In *Deaktor* the individual plaintiffs entered an agreement with the corporate defendant which resulted in the establishment of a supermarket business which was incorporated under the name of E. D. Foods, Inc. (corporate plaintiff). Funds were invested in E. D. Foods, Inc. so that the individual plaintiffs owned 49% of the stock while Fox Grocery obtained 51% ownership. A loan of $314,000.00 was made to E. D. Foods to finance the business operation with the Deaktors and Fox Grocery guaranteeing same. The agreement also provided that if E. D. Foods did not net a specified profit in one year Fox Grocery could buy out the Deaktors and take over the operation. When Fox Grocery eventually assumed 100% ownership the Deaktors brought suit on various theories with Count II alleging—

---

**2.** The perplexing question of who is entitled to sue under the antitrust laws, never being definitively addressed by the Supreme Court, has led to inconsistent lower federal court opinions. This problem is being made a topic of study at the continuing education forum to be sponsored by the American Law Institute in conjunction with the American Bar Association this coming November 13 and 14. *See The Private Antitrust Action: Standing and Damages,* 6 ALI–ABA CLE No. 33, p. 1 (August 15, 1975).

that the *individual plaintiffs* suffered a loss of their *income* and *investment* as a consequence of the defendants' *antitrust violations* committed against the plaintiff corporation [E. D. Foods, Inc.].

*Deaktor, supra,* at 540 (emphasis added). In recognizing the firm principle that stockholders could not possess an antitrust cause of action as enunciated by *Martens v. Barrett,* 245 F.2d 844 (5 Cir. 1957) and *Kauffman v. Dreyfus, supra,* Judge McCune, at p. 541, went on to conclude that the reviewed decisions—

> clearly establish that the shareholders and employees of a corporation *have no claim* for relief under the antitrust laws for injuries they suffer as a consequence of the injury done to a corporation by a defendant's conduct in violation of the antitrust laws. The claim of the *individual plaintiffs* in Count II seeks recovery under the antitrust laws for such consequential damage. We therefore hold that Count II does not state a claim for which relief can be granted.

The Third Circuit declined to rule on the merits of Judge McCune's holding because affirmance was in order for other reasons. *Deaktor v. Fox Grocery Company,* 475 F.2d 1112, 1115 (3 Cir. 1973), *cert. denied,* 414 U.S. 867, 94 S.Ct. 65, 38 L.Ed.2d 86 (1973). Nonetheless we believe *Deaktor* is controlling in this situation. In subscribing to Judge McCune's ruling it is our opinion that his reasoning is sound and comports with the approach this Circuit has taken with respect to standing under § 4 Clayton. We note that the contractual setup in *Deaktor* is somewhat similar to the case at bar. The Deaktors and Wobb were minority shareholders *and* management employees of the corporation that was by agreement created to retail the products distributed by the corporate defendant. Likewise Wobb's monetary claims are from loss of investment and income.

The Circuit recently had occasion to cite *Deaktor* with approval and reaffirm its "direct injury" approach to the question of who may assert antitrust claims:

> It is well established that a person seeking to recover treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, cannot prevail merely by proof that the defendant has violated the antitrust laws. In addition, he must prove that the violation was a material cause of some injury to *his* business or property. See *Deaktor v. Fox Grocery Co.,* 475 F.2d 1112, 1115 (3d Cir. 1973) . . . . .

*Rea v. Ford Motor Company, supra* at 589. (Emphasis added.)

Plaintiff strenuously argues that further discovery is necessary to determine plaintiff's *legal status* with respect to the antitrust counts. Further discovery in our opinion will not change his status. The real reason plaintiff seeks more discovery relative to standing is to substantiate his contention that the facts and circumstances surrounding the negotiation and execution of the dealer development arrangement (actually three separate agreements) between him and defendants will show a substantial quantum of personal involvement—thus personal harm—which could arguably except him from the *Deaktor* and *Kauffman* rulings. The problem with this argument is that it is grounded on analogous descriptions of the Ford Dealer Development Program by authorities to which we are not bound. *Kavanaugh v. Ford Motor Company,* 353 F.2d 710 (7 Cir. 1965) and *Kolb v. Chrysler Corporation,* 357 F.Supp. 504 (E.D. Wis.1973). *Kavanaugh* would not be persuasive in any event because it dealt solely with construction of the Dealers' Day in Court Act. The *Kolb* decision, quite similar factually to the instant case, held that the plaintiff possessed standing under § 4 of the Clayton Act to recover for alleged antitrust violations. In arriving at that conclusion Chief Judge Reynolds reasoned that under Chrysler's Marketing Investments Division Program (which is similar to Ford's Dealer Development Program) Kolb was more than an ordinary stockholder, thus he was *directly* harmed and without the well settled rule of *Kauffman v. Dreyfuss Fund, Inc., supra.* While it is true that *Kolb* appears to be the only reported authority that squarely addresses this precise issue we cannot embrace its holding for two reasons:

(1) In our judgment *Kolb* cannot be reconciled with *Deaktor,* a case we deem close enough on its facts to warrant application of its holding;

(2) *Kolb* emanated from the Seventh Circuit which evidently has taken a different approach to answering the question of standing under § 4 Clayton Act.[3]

Regarding the issue as controlled by the *Kauffman* and *Deaktor* decisions we shall therefore grant defendants' motion for summary judgment respecting Counts II and III.

## COUNTS VI and VII

■ Counts VI and VII are respectively based on unconscionability of the dealer development arrangement and improper inducement to terminate an employment contract. Believing that the legal issues here raised by defendants' motion would best be decided after full development of the facts, we shall deny the requested relief without prejudice.

With regard to both counts we are of the opinion that the law is anything but well settled. Motive and intent play important roles in the trial of each theory and plaintiff seeks further discovery relative to such elemental facts. Of course, respecting Count VI, § 2–302 of the Uniform Commercial Code, 12A P.S. § 2–302 (if applicable) provides for the opportunity to present such evidence. Similarly this Court will not make any ruling on Count VII until a complete factual record is before us. Since both counts are based on diversity jurisdiction we have the added—and more basic—problem of what law should apply to resolve the disputes engendered by this motion. While the parties apparently agree that Pennsylvania law controls resolution of Count VI we see with respect to Count VII the law of Delaware *and* Pennsylvania being urged upon us. If the parties cannot agree on the controlling law we must apply Pennsylvania's choice of law rule, *Griffith v. United Airlines, Inc.,* 416 Pa. 1, 203 A.2d

796 (1964) and we are reluctant to analyze the interests of each state without a complete factual picture relevant to Count VII.

Defendants' legal objections of waiver, estoppel, and ratification to the unconscionability count can, if deemed necessary, be resurrected after discovery is closed.

## SUMMARY AND DISPOSITION

From the aforesaid discussion the Court sees the status of this case as follows: The original seven counts asserted by plaintiff have been reduced to five. Still viable are Counts I, IV, V, VI, and VII. Proposed Counts VIII, IX, X and XI, being grounded on theories of antitrust law and brought pursuant to § 4 Clayton Act, must fall with Counts II and III. Therefore to summarize:

1. The motion of the plaintiff for sanctions is denied for the reason that the matter is now moot;

2. The motion of the defendants for summary judgment with respect to Counts II and III is granted;

3. The motion of the defendants for summary judgment with respect to Counts VI and VII is denied;

4. The motion of the plaintiff for leave to amend by adding Counts VIII, IX, X and XI is denied;

AND, it is SO ORDERED.

---

**3.** For an excellent discussion of the conflict that exists among the circuits which have considered the question *see In re Multidistrict Ve-* *hicle Air Pollution M.D.L. No. 31,* 481 F.2d 122, 125–29 and n. 7 (9 Cir. 1973).