Helen **DEBRECENI, Fund Manager for the New England Teamsters and Trucking Industry Pension Plan, Plaintiff,**

v.

**BRU–JELL LEASING CORPORATION, J.B. Consolidators, Inc., and Bernard Kerner, Defendants.**

Civ. A. No. 85–3087–T.

United States District Court, D. Massachusetts.

March 21, 1989.

Kevin Hern, Jr., Gabriel O. Dumont, Jr., Grady, Dumont & Dwyer, Boston, Mass., for plaintiff.

Lori J. Holik, Paul E. Heimberg, Riemer & Braunstein, Boston, Mass., and Michael J. Hanlon, Allan M. Dabrow, David E. Rosenbaum, Pechner, Dorfman, Wolfee, Rounick & Cabot, Philadelphia, Pa., Frank J. Weiner, Weiner & Chused, Boston, Mass., Alan B. Pearl, Pearl & Chaiet, Westbury, N.Y., for defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiff, manager of the Teamster's Pension Fund ("Fund"), brings this action [1] to collect money allegedly owed to the Fund by J.B. Williams Express, Inc. ("Express").

### I.

There is no dispute as to the material facts contained in plaintiff's first amended complaint. On April 17, 1981, Express withdrew its participation in the Fund. This triggered withdrawal liability under the MPPAA. *See* 29 U.S.C. § 1381. Plaintiff computed the amount of withdrawal liability, $96,622, and notified Express of the amount due. *See* 29 U.S.C. §§ 1382, 1391. Express did not request arbitration. The dollar amount of liability, therefore, is not in dispute.[2] Subsequently, the Fund declared Express in default of its obligations.

Plaintiff's initial complaint sought to recover the withdrawal liability from Express directly, and from its two sister companies, defendants Bru–Jell Leasing Corporation and J.B. Consolidators, Inc. (hereinafter "the sister companies"). Plaintiff amended her complaint after learning that creditors were seeking to liquidate Express, pursuant to chapter 7 of the bankruptcy code.[3] *See* 11 U.S.C. § 701 *et seq.*

Count I of plaintiff's first amended complaint seeks to recover the amount of Express' withdrawal liability from the sister companies, as companies under common control. *See* 29 U.S.C. § 1301(b)(1) (companies under common control are treated as a single employer).[4] Count II seeks to hold defendant Kerner liable for the withdrawal liability under an economic reality theory of liability that is predicated upon the undisputed fact that Kerner owns 95% of all three companies. *See* Kerner's Answers to Plaintiff's First Set of Interrogatories, Interrogatory Answer # 2.

### II.

Plaintiff has filed a motion for leave to further amend her complaint.[5] The second amended complaint would eliminate the economic reality claim and, in its place, substitute two other counts against Kerner. Count II of the second amended complaint alleges that Kerner engaged in a transaction to evade or avoid MPPAA liability in

---

1. This lawsuit arises under the Multi-employer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381 *et seq.* (hereinafter "MPPAA"), which amended the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (hereinafter "ERISA").

2. The MPPAA requires an employer to demand arbitration in order to contest either the fact of liability or the amount owed. *See* 29 U.S.C. § 1401(b)(1) ("If no arbitration proceeding has been initiated ... the amounts demanded by the plan sponsor ... shall be due and owing...."). *See also Debreceni v. Perkins Trucking*, CA No. 82–313–Z, slip op. at 3 (D.Mass. April 28, 1986) (Zobel, J.) ("if an employer fails to properly request arbitration, it may not thereafter contest the fact or amount of withdrawal liability.").

3. That proceeding is currently pending in the Bankruptcy Court for the Eastern District of New York.

4. Section 1301(b)(1) provides: "For purposes of this subchapter ... all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1).

5. The claim against the sister companies (Count I) is the same in all incarnations of the complaint.

violation of 29 U.S.C. § 1392(c).[6] Count III of the second amended complaint alleges a fraudulent conveyance in violation of N.Y. Debt. & Cred.Law § 273 (McKinney).[7] Both of these new claims revolve around Kerner's alleged misappropriation of Express' book of accounts. Additionally, both new counts add three new defendants, Michael Cohen, Kernco, Inc., and System Freight, Inc., to this action. They are alleged to have been involved with Kerner in the misappropriation of Express' book of accounts.

Kerner opposes plaintiff's motion for leave to file the second amended complaint on the grounds that neither new claim is legally cognizable. Accordingly, Kerner urges this court to deny the motion to amend as futile, and to rule on previously filed summary judgment motions that address both counts in the first amended complaint.

### III.

■ The threshold issue raised by Kerner's opposition to plaintiff's motion to further amend the complaint is whether a court may deny leave to amend if it would have to dismiss the newly added claims upon a properly interposed motion to dismiss. While the issue has not been squarely addressed in the First Circuit, this court concludes that leave to amend may properly be denied when the proffered claim is futile. *Cf. Vargas v. McNamara,* 608 F.2d 15, 18 (1st Cir.1979) (suggesting in *dicta* that futility might justify denying leave to amend).

Fed.R.Civ.P. 15(a) provides: "a party may amend [the complaint] ... by leave of court ... and leave shall be freely given when justice so requires." In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Court explained the policies underlying Rule 15(a):

If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment,* etc.—the leave sought should, as the rules require, be 'freely given.'

*Id.* at 182, 83 S.Ct. at 230 (emphasis added).

There has been some debate outside this circuit as to whether a court should deny leave to amend solely because the amendment does not state a claim upon which relief can be granted. *Compare Reaves v. Sielaff,* 382 F.Supp. 472, 473–76 (E.D.Pa. 1974) (legal insufficiency of amendment is a basis for denying leave to amend); *Wobb v. Ford Motor Co.,* 76 F.R.D. 452, 455–58 (W.D.Pa.1977) (same) *with Cravatts v. Klozo Fastner Corp.,* 16 F.R.D. 454, 455 (S.D. N.Y.1954) (legal insufficiency of amendment not a proper basis for denying leave to amend); *Alloy Cast Steel Co. v. United Steel Workers of America,* 70 F.R.D. 687, 687–89 (N.D.Ohio 1976) (same). *See also* 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4], at 15–78/15–81 (2d ed. 1987) ("Conflict has existed as to whether legal insufficiency of the proposed amendment is a proper ground for denying leave to amend.") (collecting cases). This court believes that the better approach is to deny leave to amend when there is no merit to the new claims. In so doing, the court should treat the opposition to a motion to amend as a motion to dismiss the new claims and then evaluate them on their merits. *See Connors v. Marontha Coal Co., Inc.,* 670 F.Supp. 45, 46 (D.D.C.1987)

---

6. Section 1392(c) provides: "If the principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction." 29 U.S.C. § 1392(c).

7. Section 273 provides: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y.Debt. & Cred.Law § 273 (McKinney).

("In evaluating whether amendment would be futile, we treat [the opposition to the motion to amend] as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (2), (6)."). This approach is particularly appropriate where, as here, the legal sufficiency of the proposed amendment has been fully briefed by the parties.

For a court to grant a motion to amend, only to turn around and dismiss the claims upon the filing of a properly interposed motion to dismiss, would be a waste of time for both the court and counsel. *See* Fed.R. Civ.P. 15(a). *See also* 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4], at 15–78/15–81 (2d ed. 1987) ("it would be an idle move for the court to allow such an amendment over the objection of the opposing party who could simply make a formal motion to dismiss ... after leave to amend is granted. Accordingly, leave to amend in such circumstances properly may be denied.").

Having taken this procedural position, the court now turns to the issue as to whether the two new claims contained in the second amended complaint are legally cognizable.

### IV.

Both of the new claims that plaintiff seeks to assert against Kerner and the putative defendants revolve around the same allegation. Plaintiff claims that after organizing Kernco, Inc., Kerner and Cohen misappropriated Express' book of accounts. They then used it through Kernco, Inc. to generate business for System Freight, Inc., pursuant to an agreement among these parties. Plaintiff claims that the agreement and misappropriation is a fraudulent conveyance under New York law. Additionally, the activity is alleged to be a transaction to "evade or avoid" withdrawal liability in violation of 29 U.S.C. § 1392(c).

Kerner claims that this court lacks personal jurisdiction over him to hear either claim. Alternatively, Kerner contends that the claims are not cognizable in this court,

because they allege a misappropriation of an asset of a bankrupt company and, therefore, should be litigated in the bankruptcy proceeding currently pending in the Eastern District of New York.[8] Each of Kerner's arguments will be addressed seriatim.

### A. Personal Jurisdiction

■ Personal jurisdiction is a hybrid concept. It is comprised of two prongs, one statutory and the other constitutional. *See Bond Leather Co. v. Q.T. Shoe Mfg Co.,* 764 F.2d 928, 931 (1st Cir.1985); *Good Hope Industries, Inc. v. Ryder Scott Co.,* 378 Mass. 1, 5–6, 389 N.E.2d 76, 79 (1979). Where the underlying claim arises under a federal statute, federal law governs both aspects of the analysis. *See Driver v. Helms,* 577 F.2d 147, 154–57 (1st Cir.1978), *rev'd on other grounds sub nom. Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). But where the court exercises pendant subject matter jurisdiction over a state law claim, state law controls the statutory analysis for purposes of determining personal jurisdiction. *Cf. Hahn v. Vermont Law School,* 698 F.2d 48, 49 (1st Cir.1983) ("The law of the forum ... applies in determining the amenability to suit of a nonresident in a diversity action.").

■ Where a complaint contains two claims, only one of which arises under federal law, there must be an independent basis for the assertion of personal jurisdiction for each claim. Jurisdiction over one claim does not imply jurisdiction over another. A party may not rely on the doctrine of pendent jurisdiction to obtain personal jurisdiction over a defendant. That doctrine refers only to the power of a court to hear a particular type of case, not to the power of a court to enter a judgment that binds a particular defendant. *See Connors v. Marontha Coal Co.,* 670 F.Supp. 45, 47 (D.D.C.1987) (requiring an independent basis for the assertion of personal jurisdiction for pendent state law claims even though

---

**8.** Kerner also argues that the amendment should be denied because of undue delay. The affidavits submitted in connection with this motion indicate that plaintiff did not learn of the alleged misappropriation until May 1988. Leave to amend, therefore, was sought in a timely fashion.

there was personal jurisdiction under ERISA for § 1392(c) liability). With that framework in mind, the court turns to plaintiff's two new claims.

### 1. Fraudulent Conveyance Claim

■ Once the defense of lack of personal jurisdiction has been raised, plaintiff has the burden of coming forward with sufficient evidence to indicate that jurisdiction is proper. *E.g., Ealing Corp. v. Harrods Ltd.,* 790 F.2d 978, 979 (1st Cir.1986) ("It is well settled that when a court's personal jurisdiction over a defendant is contested, the plaintiff has the burden of showing that jurisdiction exists."). Plaintiff relies on section 3 of the Massachusetts long-arm statute for the assertion of personal jurisdiction over Kerner. *See* M.G.L. ch. 223A, § 3. But all the bases for the assertion of personal jurisdiction contained in section 3 require some nexus between the claim asserted and conduct affecting the Commonwealth. *See* M.G.L. ch. 223A, § 3; *Bond Leather Co.,* 764 F.2d at 931–32 (discussing the requirements under § 3(a)). Personal jurisdiction in this case is improper, because no such nexus exists.[9]

Plaintiff's complaint is silent as to where the alleged fraudulent conveyance took place.[10] Kerner asserts that all the events contained in the complaint took place in New York.[11] Notably, plaintiff's reply memorandum fails to rebut that assertion. Indeed, the fact that this claim is predicated on New York fraudulent conveyance law suggests that the alleged transaction occurred in New York, rather than Massachusetts.

Accordingly, § 3 of the long-arm statute is inapposite, leaving this court without personal jurisdiction to adjudicate the fraudulent conveyance claim.[12] The proposed amendment as to this claim, therefore, is denied as futile. *See Connors,* 670 F.Supp. at 47–48 (reaching the same conclusion on very similar facts: The allegedly fraudulent conveyances took place in Kentucky and were alleged to be a violation of Kentucky law; the pension fund was being administered in the District of Columbia.).

### 2. MPPAA Claim

■ While this court does not have personal jurisdiction over Kerner as to the fraudulent conveyance claim, there is jurisdiction to hear the claim alleging a transaction to "evade or avoid" withdrawal liability in violation of 29 U.S.C. § 1392(c). This court has already held that personal jurisdiction over Kerner exists for claims arising under the MPPAA, because the pension fund is administered in Massachusetts. *See Debreceni v. Bru–Jell Leasing Corp.,* CA No. 85–3087–T, unpublished order (D.Mass. April 30, 1986) (Tauro, J.) (docket entry # 17) ("April 30 order"). That order recognized that ERISA provides for nationwide service of process. *See* 29 U.S.C. § 1451(d). That section applies to the "evade or avoid" claim as well, thus providing a statutory basis for personal jurisdiction over that claim.

This Court's earlier order bears on the constitutional component of personal jurisdiction.

The Constitution does not require that a defendant have minimum contacts with the state in which a court is located, but only minimum contacts with the United

9. In an attempt to satisfy the nexus requirement of § 3, plaintiff points to certain contacts between Kerner and Massachusetts. All of these contacts relate to Kerner's activities on behalf of Express while it was a going concern. They all predate the alleged misappropriation and, thus, bear no relation to plaintiff's fraudulent conveyance claim. These contacts, therefore, have no relevance to the jurisdictional issue.

10. The complaint only alleges the citizenship of the parties, not where the transaction took place. Kerner, Cohen and Kernco, Inc. are citizens of New York. System Freight, Inc. is a citizen of New Jersey.

11. Insofar as defendant Kerner's affidavit contains legal conclusions, this court has disregarded them and has relied solely on the *facts* contained in that affidavit. Accordingly, there is no need to rule on plaintiff's motion to strike the legal conclusions from the affidavit.

12. Having determined that plaintiff has failed to satisfy the statutory requirements for the assertion of personal jurisdiction over Kerner on the fraudulent conveyance claim, this court offers no opinion as to whether the exercise of personal jurisdiction in this case is constitutionally permissible.

States, where a federal statute provides for nationwide service of process.

April 30 order. The fact that the alleged violation had no connection with Massachusetts, therefore, does not limit this court's authority to enter a final judgment on the MPPAA claim that is binding upon Kerner.

### B. Bankruptcy Law

■ Although this court does have personal jurisdiction to hear the § 1392(c) claim, that does not end the inquiry. Kerner asserts that the § 1392(c) claim must be dismissed, because any claim for misappropriation of a bankrupt's assets belongs exclusively in the bankruptcy proceeding that is currently pending against Express in the Eastern District of New York. This specific issue, concerning the narrow area where bankruptcy law and ERISA intersect, has never been addressed previously in a reported decision. This court, therefore, begins with a clean slate, guided by the policies underlying the two statutory schemes. Because both the MPPAA claim and pendant New York claim are based on the same allegedly fraudulent transaction, the analysis that follows applies equally to both.[13]

A bankruptcy trustee has broad authority under the bankruptcy code to marshal all the debtor's property for the benefit of the creditors. Property is broadly defined in the code, see 11 U.S.C. § 541, and includes intangibles such as customer lists and good will. See *Robinson v. Watts Detective Agency*, 685 F.2d 729, 734 (1st Cir.1982), *cert denied sub nom. Consolidated Service Corp. v. Robinson*, 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953 (1983) (customer routes are property includable in the debtor's estate). *See also* 4 *Collier on Bankruptcy* ¶ 541.01, at 541–5 (L. King, editor, 15th edition, 1988) (§ 541 includes tangible and intangible property within the estate).

The trustee's authority goes beyond obtaining property that is in the debtor's possession. The trustee has broad power to void preferential transfers of property and fraudulent conveyances. 11 U.S.C. §§ 547,

548. Once the trustee voids a prohibited transaction, the transferee is obligated to return the property to the trustee. 11 U.S.C. § 550. The recovered property is then held for the benefit of the estate. *Id.*

The augmented estate is used to satisfy the claims of the bankrupt's creditors. The secured claims are disposed of first. 11 U.S.C. § 725. The remainder of the estate is then distributed according to the priority rules specified in sections 507 and 726 of the Code. 11 U.S.C. §§ 507, 726. Distribution of the estate, therefore, is governed by, and limited to, a carefully balanced and complex priority system.

There is no question that the book of accounts which plaintiff contends was misappropriated belonged to Express. To use the nomenclature of the bankruptcy code, the book of accounts is property of the debtor includable in the bankrupt's estate. *See* 11 U.S.C. § 541.

If the book of accounts was misappropriated, the trustee in bankruptcy has an obligation to use his power to recover that property for the benefit of Express' creditors. *See* 11 U.S.C. §§ 547, 548, 550. The bankruptcy trustee in this case has undertaken that obligation, and is currently attempting to determine whether Kerner misappropriated the debtor's book of accounts. The trustee has informed this court that Kerner was recently examined by the trustee, under Fed.R.Bankr. 2004, about the alleged misappropriation. Accordingly, it appears that the trustee is actively pursuing the substance of plaintiff's claims in a more appropriate forum. Plaintiff, as a participant in that bankruptcy proceeding, is charged with knowledge of the trustee's actions.

Although plaintiff styles her claims against Kerner in the language of the MPPAA and New York fraudulent conveyance law, both of these claims allege essentially that Kerner engaged in a fraudulent transaction to misappropriate a valuable asset of Express—its book of accounts. Plaintiff contends that Kerner's purpose was to prevent Express from having suffi-

---

**13.** Plaintiff's failure to state a claim cognizable in this court under New York fraudulent conveyance law, therefore, is an alternative basis for this court's decision to deny plaintiff the opportunity to add that claim to this case in her second amended complaint.

cient funds to pay its MPPAA withdrawal liability. But, all of Express' other creditors could similarly argue that the misappropriation was intended to frustrate their respective ability to collect debts that Express owed them. Plaintiff's two claims are, therefore, substantively indistinguishable from those of Express' other creditors. To permit plaintiff to satisfy her claims by focusing on an asset that may be properly includable in Express' bankruptcy estate, *see* 11 U.S.C. §§ 541, 548, would be to give her an impermissible priority.

Having concluded that both of plaintiff's new claims are not cognizable in this court, leave to further amend the complaint is denied as futile. This court, therefore, moves onward to consider the summary judgment motions directed towards the two remaining claims that are contained in plaintiff's first amended complaint.

## V.

■ ERISA treats companies that are under common control as a single employer for purposes of assessing withdrawal liability. *See* 29 U.S.C. § 1301(b); *Pension Benefit Guaranty Corp. v. Ouimet Corp.*, 711 F.2d 1085, 1094 (1st Cir.), *cert. denied*, 464 U.S. 961, 104 S.Ct. 393, 78 L.Ed.2d 337 (1983) (businesses under common control are jointly and severally liable for MPPAA withdrawal liability). Where a single shareholder owns at least 80% of two or more companies, they are "under common control." *See* 26 C.F.R. § 1.414(c)–2(c).[14] Kerner has admitted that he owns 95% of Express, Bru–Jell and J.B. Consolidators. *See* Kerner's Answers to Plaintiff's First Set of Interrogatories, Interrogatory Answer # 2. Consequently, as companies un-der common control, Bru–Jell and J.B. Consolidators are jointly and severally liable for Express' withdrawal liability. Plaintiff, therefore, is entitled to summary judgment on count I of her first amended complaint.

## VI.

■ Count II of the first amended complaint seeks to impose liability directly upon Kerner under an economic reality theory. In *Debreceni v. Graf Brothers Leasing, Inc.*, 828 F.2d 877 (1st Cir.1987), *cert. denied sub nom. New England Teamsters & Trucking Industry Pension Fund v. Graf*, — U.S. —, 108 S.Ct. 1024, 98 L.Ed.2d 988 (1988), the First Circuit rejected the economic reality theory. *Graf Brothers* specifically held that shareholders and officers could not be held personally liable under the MPPAA for withdrawal liability unless the corporate veil is pierced. *Id.* at 878. *See also Connors v. P & M Coal Co.*, 801 F.2d 1373, 1375–78 (D.C.Cir. 1986) (same). *Cf. Alman v. George Mfg. Corp.*, 680 F.Supp. 56, 57–58 (D.Mass.1988) (Tauro, J.), *cert. denied*, — U.S. —, 109 S.Ct. 1173, 103 L.Ed.2d 235 (1989) (officer-shareholder not liable for delinquent payments under ERISA unless corporate veil is pierced). As plaintiff does not attempt to invoke general principles of corporate law to pierce the veil imposed by Express' incorporation, Kerner is entitled to summary judgment on this count.[15]

## VII.

To summarize, neither of the new claims contained in plaintiff's proposed second amended complaint are cognizable in this court. Both claims seek to reach property that, if it actually was misappropriated,

---

**14.** 26 C.F.R. § 1.414(c)–2 is a treasury regulation promulgated pursuant to 26 U.S.C. § 414(c). ERISA makes specific reference to such regulations. *See* 29 U.S.C. § 1301(b)(1). Accordingly, these regulations are applicable to determining what constitutes common control for purposes of imposing withdrawal liability pursuant to the MPPAA. *See Ouimet Corp.*, 711 F.2d at 1094 (using the temporary treasury regulation now codified as 26 C.F.R. § 1.414(c)–2 to impose MPPAA withdrawal liability).

**15.** Although plaintiff has filed an opposition to Kerner's motion for summary judgment, plaintiff does not dispute the impact of *Graf Brothers* on count II of her first amended complaint.

*See* Plaintiff's Opposition to Bernard Kerner's Motion for Summary Judgment, at 2 ("The Plaintiff concedes that the economic reality theory of officer/shareholder liability, upon which Count II of her [First] Amended Complaint is based, is no longer a viable cause of action in the context of withdrawal liability."). Her opposition to the motion is based on her expectation that this court will grant her motion to further amend the complaint to allege additional claims against Kerner. As this court has already denied leave to further amend the complaint, *see supra* at IV, there is no basis for refusing to dismiss Kerner from this case.

belongs to the debtor's estate in a pending bankruptcy proceeding. Additionally, this court lacks personal jurisdiction sufficient to adjudicate the claim alleging a fraudulent conveyance in violation of New York law. Accordingly, leave to amend is denied as futile.

Because there are no factual disputes regarding the claims contained in plaintiff's first amended complaint, both of those claims are ripe for summary judgment. The sister companies are jointly and severally liable to plaintiff for the amount of the withdrawal liability pursuant to 29 U.S.C. 1381(b). Kerner, however, cannot be held liable for the withdrawal liability simply by virtue of his position as an officer, director and shareholder of the now defunct company. Accordingly, plaintiff is entitled to summary judgment on count I of her first amended complaint and Kerner is entitled to summary judgment on count II.

An order will issue.